Fiedler v. The St. Louis, I. M. & S. Ry. Co.

FIEDLER, V. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant.*

DIVISION TWO.

1. **Railroad:** NEGLIGENCE : TRESPASSER ON TRACK. In an action against a railway company for causing the death of plaintiff's daughter, aged fifteen years, the evidence tended to show that, although the deceased was a trespasser on defendant's tracks, yet many people habitually walked on the tracks along the place of the accident, and that the train was running more than six miles an hour, in violation of the city ordinance. The engineer saw the girl when about six hundred feet distant, and sounded the alarm whistle when within about thirty-five feet of her, but did not check the speed of the train, although the deceased gave no indication of hearing the alarm signal. *Held,* that a verdict for the plaintiff would not be disturbed.

2. ——— : ——— : ———. Where there is reason to apprehend that the track may not be clear, the persons in charge of a railway train cannot act on the presumption that the track is clear without the company being responsible for the consequences, and this is true, notwithstanding the company's right to have a clear track.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*H. S. Priest* for appellant.

(1) The demurrer to the evidence should have been given. *Dlauhi v. Railroad,* 105 Mo. 645 ; *Boyd v. Railroad,* 105 Mo. 371 ; *Barker v. Railroad,* 98 Mo. 80 ; *Powell v. Railroad,* 76 Mo. 80 ; *Bell v. Railroad,* 86 Mo. 612. (2) Plaintiff's instruction, numbered 1, is wrong upon any theory of the case. *Dlauhi v. Railroad, supra; Guenther v. Railroad,* 95 Mo. 286. (3) The ordinance was improperly admitted in evidence, and it was error to predicate a liability upon it in the

instructions. *Fath v. Railroad*, 16 S. W. Rep. 913; *Taylor v. Railroad*, 45 Mich. 72; s. c., 40 Am. Rep. 457. The ordinance only applies to those places over which the city has control and which the railway occupies by consent of the city, such as streets and parks. *Fath v. Railroad, supra.* The railroad did not acquire its right to hold or occupy property from the city but from the state. (4) The instruction asked by the defendant and refused by the court declared the law as it has been over and over declared by this court; and in modifying them the court set before the jury a medley of contradictory counterirritants. (5) The court erred in admitting evidence to the effect that persons frequently walked and were accustomed to walk upon the track at the place of the accident. *Gurly v. Railroad*, 16 S. W. Rep. 11.

*Joseph Jecko* and *Rassieur & Schnurmacher* for respondent.

(1) Defendant having introduced evidence on its own behalf, after its demurrer at the close of plaintiff's case was overruled, thereby waived its demurrer, and can only ask this court to review the case on all the evidence. *Bowen v. Railroad*, 95 Mo. 268; *Guenther v. Railroad*, 95 Mo. 286; *Dahlstrom v. Railroad*, 96 Mo. 99; *Eswin v. Railroad*, 96 Mo. 290; *McPherson v. Railroad*, 97 Mo. 253; *Hilz v. Railroad*, 101 Mo. 36. (2) Under the evidence plaintiff was entitled to recover. Although plaintiff's daughter was guilty of contributory negligence in being a trespasser on defendant's track, this, of itself, will not defeat plaintiff's right of recovery. *Hicks v. Railroad*, 64 Mo. 430; *Rine v. Railroad*, 88 Mo. 392; *Rine v. Railroad*, 100 Mo. 228; *Dunkman v. Railroad*, 95 Mo. 232; *Barker v. Railroad*, 98 Mo. 50; *Kellny v. Railroad*, 101 Mo. 67; *Guenther v. Railroad*, 95 Mo. 286; *Dunkman v. Railroad*, 95 Mo. 232; *Williams v. Railroad*, 96 Mo.

275; *Frick v. Railroad*, 75 Mo. 595 ; *Hanlon v. Railroad*, 104 Mo. 381 ; *Schlereth v. Railroad*, 96 Mo. 509 ; *Eswin v. Railroad*, 96 Mo. 290 ; *Kelly v. Railroad*, 95 Mo. 279 ; *Keim v. Railroad*, 90 Mo. 314 ; *Bergman v. Railroad*, 88 Mo. 678. (3) Assuming that the ordinance was introduced against defendant's objection, and that an exception had been saved, there would have been no error committed, as has been expressly decided in *Kelly v. Railroad*, 95 Mo. 279 ; *Merz v. Railroad*, 88 Mo. 672 ; *Bergman v. Railroad*, 88 Mo. 678. And the ordinance is applicable, even though the rails are laid on private property of the company. *Merz v. Railroad*, 88 Mo. 672. And to the movement of trains in the private switch yards of the company within the city limits. *Grube v. Railroad*, 98 Mo. 330. (4) The instructions asked by defendant were properly refused in the form asked. The instructions taken as a whole placed the case fairly before the jury (5) It was not error to admit evidence to the effect that persons were in the habit of walking along the track at the place of the accident. If they were, then defendant's servants had reason to apprehend that the track might not be clear, and were bound to proceed with care and to keep a lookout on the tracks to avert accidents. *Guenther v. Railroad*, 95 Mo. 286.

GANTT, P. J.—This action was brought by the respondent against the Missouri Pacific Railway and the St. Louis, Iron Mountain & Southern Railway Company, to recover the statutory penalty for $5,000 for causing the death of his minor daughter, Katherina Margaret, by negligently running a train of cars over her on the fifteenth day of September, 1887. Plaintiff dismissed as to the Missouri Pacific Railway, before the trial.

Plaintiff averred that on the fifteenth of September, 1887, while his said daughter was walking along Main street in said city at a point a short distance below

Anna street, the defendant, with gross negligence and carelessness, caused one of their trains with locomotive attached to be propelled along and across said Main street in such a manner that with speed it approached along and across said Main street and struck and killed said Margaret Fiedler without any negligence on her part contributing to said injury ; that defendant's employes failed to keep such a lookout as careful management would dictate ; that no bell was rung, and no signal or warning was given of the approach of said train ; that defendant was running the said train at a rate of speed exceeding six miles an hour, with no bell ringing, in violation of an ordinance of the city of St. Louis; that but for the carelessness in running said train defendant might have prevented the injury to deceased after they saw the danger to which she was exposed.

The answer was a general denial and contributory negligence.

Plaintiff was a peddler, who at the time of the death of his daughter was living at Utah street and levee near the scene of the accident. His daughter Margaret was about fifteen years old, of ordinary size for girls of that age. She was on her way to work in a match factory near Benton street, north of her home. It does not appear how long she had worked in the factory prior to her death.

The accident occurred about 6 : 45 A. M. on the main east track of defendant's road, from one hundred and fifty to two hundred and fifty feet south of the crossing of Anna street, and between that street and the Arsenal wall. Anna street runs east and west at right angles with and across the tracks. Other streets abut upon the tracks but none of them cross. The tracks are upon an embankment eight to ten feet high, running north and south, and are straight presenting an open view between Anna street and the Arsenal, and beyond, a distance approximating two thousand feet. There are two tracks ; the east track is used by north-bound

trains, and the west, by south-bound trains. There is a space of six feet between the tracks.

The train which struck plaintiff's daughter was the regular north-bound passenger from the south to St. Louis. It was on time. The accident was witnessed by several witnesses. The plaintiff called four, Gordon, Durand, Wycoff and Cartner. The first three were standing upon the station platform at Anna street, waiting to take the south-bound train, then about due, for their work.

Gordon testified he had just bought a ticket of the agent, and, as he came out of the door, heard the alarm whistles blown by the engine, looked and saw the plaintiff's daughter about ten feet in front of the train on the east track; saw it strike her, at a point about three hundred and fifty feet south of Anna street. The train brought the body on the pilot to the depot, where it dropped off; she was unconscious. He noticed when the train reached the depot, "the brakes were appled to the drivers and the wheels of the cars were dragging." He thought the train was running from twelve to fifteen miles an hour.

Durand gave it as his opinion that the train was about twenty yards from the girl when the alarm whistle was blown. She did not heed the alarms *at all*, but kept walking up the track in front of the train. This witness says she was on the east track all the time. The plaintiff, over the objection of the defendant, proved by this witness that there was no other handy way to go down south except on the railroad tracks, unless a person should go round by Third street.

Edwin C. Wycoff testified he was at the station that morning; when he first saw the train it was coming out of the Arsenal wall; the girl was then going north, on the west track, the train on east track. She left the west track he supposed because the south-bound train would soon be due. At a point about four hundred feet south of the station at Anna street the girl shifted

her position from the west to the east track. She could have been seen on the track from the Arsenal wall as the view was clear. *The engineer sounded the whistle when about three hundred feet from the girl.* Does not recollect that she walked between the tracks. She paid no attention whatever to the whistle.

Cartner testified, that he was walking north twenty-five or thirty feet behind the girl. She was on the east track. He heard the train coming, heard it whistle within half a block or one hundred and fifty feet of the girl. Heard no bell. He saw the girl when the engine whistled; she did not pay any attention to it.

The defendant demurred to the evidence. The court overruled the demurrer, and defendant then offered evidence that its fireman rang the bell continuously; that the girl was on the west track, left it and passed in front of the train and walked up the east track; that the engineer at once gave the signals, and attempted to stop the train but it was too late.

The important question of fact in the case was whether the deceased was walking on the east track on which the train was moving north that morning in full view of the engineer, and on this point the evidence is conflicting. The jury were the triers of fact, and they found she was on the track, continuously from near the Arsenal till she was struck.

If the jury believed plaintiff's witnesses, as it was their province to do, the girl was on the same track with the train, at a point at least six hundred feet in front of it; the view was unobstructed. Indeed the engineer says himself, that he saw her when he was at a point a little north of Dorcas street, *about six hundred feet ahead of him,* but he thought she was between the tracks. He admits he was running about ten miles an hour. He says he gave the danger whistle when he was in thirty-five feet of the girl. He saw the girl all the time. The jury must have concluded that the engineer was mistaken as to the girl's being between the tracks.

That the girl was a trespasser by the statute law of the state is clear, but the evidence of the conductor and fireman of the train is undisputed that, at the hour this train passed this point, a great many people were in the habit of walking on and across these tracks. It was a place where the trainmen might expect to find pedestrians on the track.

The conduct of the deceased is inexplicable. Signals that were heard by all the other witnesses were unheeded by her, although given in thirty-five feet of her. There is but one explanation of her conduct, and that is she must have concluded that the train was approaching from behind on the west track; either this or she was lost in abstraction, and totally oblivious of her surroundings. That she had put herself in a place of peril must be conceded ; the habit of adult people deliberately walking on these tracks is inexcusable and reprehensible in the highest degree. It is their duty to refrain from committing a trespass. The statute prohibiting all persons from walking on these tracks was enacted with the double view to save the lives of the trespassers by warning them of danger and of preventing accidents and lessening the danger to the passengers and trainmen whose safety depends upon a clear and unobstructed track.

In the construction of that statute in *Barker v. Railroad*, 98 Mo. 50, this court held the trainmen were under no obligation to be on the watch for a trespasser at a place where there was nothing in the surroundings that would naturally lead them to suspect that persons would be on the track. But because of the known propensity of children and even adults to take the chances of walking on those tracks in populous cities or districts, the rule has been long settled in this state, that when there is reason to apprehend that the track may not be clear, notwithstanding the right of the company to have it clear, the persons operating a train cannot act on the presumption that the track is clear without being responsible for the consequencies.

In *Dunkman v. Railroad*, 95 Mo. 232, after a review of all the cases in this state, this court held, that "notwithstanding the injured party may have been guilty of contributory negligence a railroad company is still liable for the injury if it could have been prevented by the exercise of reasonable care on the part of the company *after discovery of the danger in which the injured party* stood, or if any of the company failed to discover the danger through its own recklessness, when the exercise of ordinary care would have discovered it, and averted the calamity," and the same doctrine is repeated, and reaffirmed in *Williams v. Railroad*, 96 Mo. 275. Here the girl was seen by the engineer six hundred feet ahead of him. If she was on the track on which he was running his train, and he saw her six hundred feet ahead of him and gave the alarm, or as some of the other witnesses say in three hundred feet of her, and she gave no heed whatever to this signal of danger, as a reasonably careful man, it then became his duty to check his train and avoid injuring her, after thus observing her danger. Her position had then become one of peril. The fact that she was walking between the rails and the whistle sounded so close to her in the rear, and she gave no indication whatever of hearing it, imposed on the engineer the duty of stopping his train and avoiding her destruction.

The jury were authorized by the evidence to find he saw her and could have stopped. If she was really walking between the tracks, he might reasonably expect she would not only not get on his track but would withdraw to a place of safety.

The court fairly submitted to the jury defendant's theory of the case, in instruction numbered 1, given of its own motion. Had the jury found the facts upon which that instruction was based it was their duty to have returned a verdict for defendant. It is clear they chose rather to believe the other witnesses. They are the triers of the facts. We think the circuit court

instructed them properly. It is very clear the train was being run far in excess of six miles an hour.

The wisdom of that ordinance would seem to be vindicated by the facts in this case. Had the train been running at the speed prescribed by the ordinance, this girl would have been discovered and her life preserved notwithstanding her imprudence and abstraction. We think the case was well tried. The judgment is affirmed. All concur.