Chamberlain v. Mo. Pac. R'y Co.

CHAMBERLAIN v. MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

### In Banc, March 17, 1896.

133  587
78a 255
133  587
159  280
159  288
84a 419
133    587
93a ¹553
133    587
102a ¹120

1. **Railroad**: TRESPASSER ON TRACK, COLLISION WITH: NEGLIGENCE. Where a train is running through a populous neighborhood just outside the city limits, where workmen have for years been accustomed to use the track in going to and returning from their work, and the company's servants in charge of the train see, or by the exercise of ordinary care, may see a person on the track in time to avoid a collision, but fail to use such care, the company will be liable, though the person injured was a trespasser.

2. ———: ———: ———: ———: INSTRUCTION. In an action against a railroad company for killing a trespasser on its track there was evidence that the accident occurred in a populous neighborhood just outside the city limits, where workmen were in the habit of walking the track; that from the point where deceased was struck the track was level and straight for two thousand feet in the direction from which the train came, and that no signal was given until the engine was nearly upon the deceased. *Held,* that it was a question for the jury whether the company's employees might, by the use of ordinary care, have seen the deceased in time to have averted the accident.

3. ———: ———: ———: ———: EVIDENCE. On the trial defendant inquired of its engineer, who was in charge of the locomotive at the time of the accident, if it was not a common thing to see persons walking on the track continue to do so after hearing the sounding of the alarm and until the train came near them, when they would leave the track. *Held,* irrelevant and immaterial.

IN BANC.

4. **Railroad**: TRESPASSER ON TRACK: STOPPING TRAIN. The engineer is not required to stop his train if the trespasser is far enough away to warn him, and a timely warning is sufficient until it is seen that for some cause it is not heeded. Then it is his duty to avoid killing even a trespasser, if by the exercise of ordinary care it can be done.

*Appeal from Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

AFFIRMED.

*Robinson & Carkener* for appellant.

(1)   The trial court should have directed a verdict for the defendant.   The accident was caused, not by any negligence on the part of the defendant, but by the grossest sort of negligence on the part of plaintiff's husband.   It occurred in the country, not within the corporate limits of a populous city, nor at a public crossing, and the deceased being a trespasser on defendant's track, the defendant's employees owed to him no duty except not to wantonly injure him.  Under the circumstances of the case they were not bound to anticipate his presence on the track, or to be on the lookout for him.  *Isabel v. Railroad*, 60 Mo. 475; *Maher v. Railroad*, 64 Mo. 267; *Harlan v. Railroad*, 64 Mo. 480; *Harlan v. Railroad*, 65 Mo. 22; *Zimmerman v. Railroad*, 71 Mo. 476; *Yarnall v. Railroad*, 75 Mo. 575; *Rine v. Railroad*, 88 Mo. 392; *Dunkman v. Railroad*, 95 Mo. 232; *Williams v. Railroad*, 96 Mo. 275; *Barker v. Railroad*, 98 Mo. 50; *Shaw v. Railroad*, 104 Mo. 648; *Dlauhi v. Railroad*, 105 Mo. 645; *Hyde v. Railroad*, 110 Mo. 275; *Spicer v. Railroad*, 45 Am. and Eng. R. R. Cases, 28; *Railroad v. Black*, 89 Ala. 313; *McAdow v. Railroad*, 105 N. C. 140; *Meredith v. Railroad*, 108 N. C. 616; *Esrey v. Railroad*, 88 Cal. 399; *Candelaria v. Railroad*, 48 Am. and Eng. R. R. Cases, 565; *Tennis v. Railroad*, 45 Kan. 503; *Railroad v. Adams*, 33 Kan. 427; *Johnson v. Truesdale*, 46 Minn. 345; *Woodruff v. Railroad*, 47 Fed. Rep. 689.   (2)   The court committed error in giving plaintiff's instruction number 1.   It made an issue of and gave undue prominence to immaterial matters, amounting to a comment upon the evidence calculated to operate prejudicially to the defendant; and submitted to the jury the determination of issues which there was no testimony tending to prove.

(3)  The court committed error in interlining defendant's instruction number 2 by inserting therein the words, "or by the exercise of ordinary care might have seen him in a position of imminent danger." There was not a particle of evidence tending to show a lack of care on the part of defendant's engineer, and said instruction erroneously assumes the fact that the deceased was in a position of imminent peril when he might have been seen by the defendant's engineer, in the exercise of ordinary care.  (4)  The court committed error in interlining defendant's instruction number 3. The engineer had a right to assume that the deceased was in possession of his mental faculties and would get off the track in time to avoid danger, until something occurred to indicate to the contrary.  *Boyd v. Railroad,* 105 Mo. 371; *Moody v. Railroad,* 68 Mo. 470; *Maloy v. Railroad,* 84 Mo. 270; *Railroad v. Black,* 89 Ala. 313. (5)  The court committed error in excluding evidence as to the habits of persons while walking on railroad tracks.  If there was any evidence justifying the court in sending this case to the jury, this evidence was very important and its exclusion constitutes reversible error.

*Kinley & Kinley* with *W. D. Jameson* for respondent.

(1)  The plaintiff could not be affected by the custom of other people at other parts of the road. Beside the question was not proper because it was leading and assumed that the persons on the track heard the alarm, and the engineer knew it.  If the question was framed as a hypothetical one, the same was not proper, for its scope was much wider than the facts in the case on trial.  In the case at bar, there was no evidence that deceased heard the alarm, in fact, the evidence shows that deceased did not hear the alarm.

*Railroad v. Clark*, 108 Ill. 113; *Railroad v. Richardson*, 91 U. S. 454. (2) If any error was committed in giving plaintiff's instruction number 1, it was not committed against the defendant. It may have required the jury to find more facts before rendering a verdict for plaintiff, than were absolutely necessary, yet this is only an additional burden imposed upon the plaintiff. The instruction submitted the questions involved, that made or would make defendant liable for running a man down and killing him, under the laws of this state. This instruction is the law of this state, when the conditions exist that are called for and which were shown by the evidence of this case. The rule is the one that for years has been recognized by this court in a case where the track runs through populous neighborhoods, or for any other reason a clear track may not be reasonably expected by the servants in charge of the train. *Guenther v. Railroad*, 95 Mo. 286; *Guenther v. Railroad*, 108 Mo. 18; *Williams v. Railroad*, 96 Mo. 275; *O'Mellia v. Railroad*, 115 Mo. 221; *Frick v. Railroad*, 75 Mo. 602; *Fiedler v. Railroad*, 107 Mo. 645; *LeMay v. Railroad*, 105 Mo. 361; *Lynch v. Railroad*, 111 Mo. 607; *Hicks v. Railroad*, 65 Mo. 36; *Maher v. Railroad*, 64 Mo. 267. (3) The amendment made by the court to the second instruction of defendant, was the law of this state. In populous neighborhoods, or places on the track where trespassers may be reasonably expected, the rule of diligence is enlarged, and unless the engineer used reasonable care to avoid the accident after discovery of plaintiff's husband on the track, or by the exercise of ordinary care might have seen him in a position of imminent danger, etc., in time to have avoided the accident and failed to exercise such care the company is liable. In such places as deceased was on the track, the law of this state does not permit employees to run trains without the exercise of ordinary care, and then

to shield their employer from liability by saying, "I did all I could to avert the injury after I saw the deceased." The rule is too narrow. *Huelsekamp v. Railroad*, 37 Mo. 553; *Morrissey v. Ferry Co.*, 43 Mo. 382; *Brown v. Railroad*, 50 Mo. 461; *Isabel v. Railroad*, 60 Mo. 475. (4) The instruction refused on behalf of the defendant was commenting on the evidence and advising the jury what its probative force and effect was; hence it was properly refused. It was also properly refused as there was evidence of negligence on the part of defendant; hence the case should have gone to the jury. The unbroken rule of decisions of this state is, when there is any evidence to sustain the issues, the case is properly submitted to the jury. *Norton v. Ittner*, 56 Mo. 391; *O'Mellia v. Railroad*, 115 Mo. 221; *Mauerman v. Siemert*, 71 Mo. 104; *Nagel v. Railroad*, 75 Mo. 665; *Brown v. Railroad*, 50 Mo, 466.

### DIVISION TWO.

GANTT, P. J.—This is an appeal from a judgment of the circuit court of Jackson county, in favor of Olive Chamberlain, the widow of Godfrey Chamberlain who was killed by a train on the Missouri Pacific Railway Company's track, in the east bottoms near Kansas City on September 2, 1892.

The action is grounded upon the negligence of the defendant's servants in running its train over said Godfrey Chamberlain without warning after they discovered he was unconscious of the approach of said train. Plea of contributory negligence and denial of negligence of the trainmen. A jury was duly impaneled. The facts developed were few and exceedingly simple.

Where the tracks of the Missouri Pacific pass the eastern boundary line of Kansas City, they are pro-

longed through what is known in all that section as the east bottoms for two or more miles. These bottoms contain many large factories, industries that give employment to large numbers of laborers, such as grain elevators, factories, and mills, and on account of their proximity to the city and their great fertility, these bottoms are largely devoted to market gardens, and truck patches, and the gardeners and their laborers reside along this track.

About the point where the plaintiff's husband was killed a private road crossing had been opened across defendant's tracks by the defendant and planked for the convenience of passers-by.

As the defendant's tracks leave the city limits coming east they make a curve and from that curve east they are almost straight and very level and a man can readily be seen from the eastern part of the curve a distance of two thousand feet east.

The testimony in behalf of plaintiff tended strongly to prove that for a number of years prior to this unfortunate killing, a good many workmen and pedestrians were in the habit of using these tracks of defendant in going to and from their work and more particularly in the early morning from 6 to 7.

The engineer in charge when the plaintiff's husband was killed, was a witness for the defendant at the trial and was asked, on cross-examination: "State if, in your testimony before the coroner, you did not state 'I hardly ever go along the road, this track where this man was killed, but what there is somebody walking along the track. It is traveled a good deal by people?'" Answer. "I could not say whether I did or not. I don't remember. I was running extra on passenger trains. * * * I see men on most every track on any railroad. * * * There were elevators in the east bottoms and there was a sewer pipe factory west of where

the accident occurred.  * * *  I have seen people on the tracks more than once and probably more than three times.   I am aware that people walk on the track there and everywhere else."

W. C. Hutto, a witness for plaintiff, testified that he lived in the east bottoms and worked at the sewer pipe factory.   Went to work about 7 every morning. "A good many people walk down the Missouri Pacific track early in the morning going to their work.   People have been going down that track every morning since it was built, and before this accident happened last September."

George Rowley testified that it was a thickly settled neighborhood where the accident happened.  Often walked on the track and saw others do so.

On the morning of September the second it was clear and bright.   Plaintiff's husband and Nicholas Williams were walking east, down the track of defendant, on their way to work in the east bottoms and had reached the point very near to where the private crossing crossed defendant's tracks.   A passenger train on the tracks of the Chicago & Alton Railroad was passing them going west to the city.   Just at this juncture a passenger train of the defendant in charge of Harry Lewis as conductor and F. Raymond as engineer going east, running from forty to fifty miles an hour suddenly gave an alarm whistle.   Williams, who was walking on the end of the ties, jumped and escaped injury, but Chamberlain, who was walking between the rails, was struck and instantly killed.

The engineer testified that he sounded the crossing whistle to warn them when he was probably three hundred feet or a little more from them.   He ran perhaps two seconds more from the time he blew the warning, possibly four seconds, thinking they would look around, but as they did not look back he then set the brakes

and then gave the alarm whistle and continued to blow until he struck Chamberlain. The engineer is corroborated by the brakeman Wareham but is sharply contradicted by Williams, who was walking with deceased at the time, who says the engine was nearly on them before it whistled at all.

Gill, who was working for a gardener about seventy-five yards distant and reached the dead body before the train stopped, testified unequivocally that the train was running at full speed when it struck the deceased. He says: "I saw them coming down the track. They were carrying dinner pails. They attracted my attention, and I saw this train coming down the track behind them and I felt alarmed about them. I thought that they did not know that this train was coming down the track. They did not walk like they were paying any attention to it at all. I saw the train some distance before it struck him. I don't think they slacked the speed any before Chamberlain was struck. *It appeared to me they were right at him most when they gave two or three sharp whistles.* That is the only time they whistled that I know of. I think I would have heard it if there had been any other whistles. *I did not hear it whistle until it got on to them.*"

J. F. Amburger, yard clerk of the Milwaukee railway, was a passenger on the train, going to his work. He says: "As we were near the Milwaukee crossing that morning I was sitting in the combination car with the window up and I heard the alarm sounded for, I supposed, stock on the track; and I stuck my head out of the window and just as I did I saw this man Williams get off the track. The train was going at its usual rate of speed when the alarm was given. After they began to sound the alarm whistles they began to slow up. I heard no whistle but the three or

four sharp alarm whistles I have mentioned.     There was no crossing whistle sounded.''

The conductor, Lewis, and baggage man, Moore, only heard the sudden alarm whistles.

Williams, who was with deceased, says that from time to time he looked back to see if any trains were coming and saw none.

The engineer testified that it was possible that he saw deceased when he first turned the curve, but gave no signal until within four or five hundred feet of him. He says he saw the Chicago & Alton train before he noticed the man on the track.     As an excuse for not observing the man sooner, he says: "The engine was not steaming good.     I had shut the pump off, and before shutting the engine off after I shut the steam off I had to put the pump to work again.     The fireman was at work at his fires.     I had been talking to him about the fires.     The inspirator was not working and I was endeavoring to adjust it.     When I went to start the injector I opened what is known as the foot cock behind me.     I had just put this injector at work immediately before I saw this man on the track. * * * At the rate of speed we were going, the train could hardly have been stopped in less than six hundred feet.''

At the close of the evidence the court gave the following instructions for the plaintiff.

"The court instructs the jury that if they shall believe from the evidence that Godfrey Chamberlain at the time he was killed was the husband of plaintiff and that this suit was brought within six months after his death and shall further find from the evidence that the track where Godfrey Chamberlain was struck was near a crossing over defendant's tracks for the accommodation of passers-by, and that the track was level and straight for a long distance, east and west, from

the point of the catastrophe and that said track for about five years prior thereto, and at about the time of such striking said Chamberlain had been and was being frequently used by pedestrians in going to and from the northeastern part of Kansas City, and that said road ran through a thickly settled portion of the country, just outside of Kansas City, and that Godfrey Chamberlain, while walking upon defendant's track, became in imminent peril of being struck by defendant's train, and defendant's employees in charge of said train became aware of his peril of being struck in time to have enabled them, by the exercise of ordinary care, to have stopped said train, and to have averted the injury to said deceased, or if the jury believe from the evidence that said employees in charge of said train, by the exercise of ordinary care could have become aware of his peril in time to have stopped said train, and to have averted said injury to said deceased, and that they failed to exercise such care and stop said train, and that by reason of such failure to exercise such ordinary care, the said train was not stopped and said Chamberlain was struck and killed, then the jury must find for the plaintiff, though the jury may find that the deceased, Godfrey Chamberlain, was guilty of negligence in walking on defendant's track.

"By ordinary care is meant such care as an ordinarily careful and prudent person would exercise under the same or similar circumstances.

"2.    The court instructs the jury that under the law if they find for plaintiff, their verdict must be for $5,000.    That it can not be more nor less that sum, if for the plaintiff."

Defendant duly excepted to these instructions.

The court thereupon gave the following instructions for the defendant.

"1.   The court instructs the jury that the defendant's engineer had the right to run his train at the rate of forty or forty-five miles an hour and that the fact that he did so did not constitute negligence and the plaintiff has no right to recover on that account.

"2.   The court instructs the jury that the plaintiff's husband was guilty of contributory negligence in walking on defendant's track at the time of the accident, and if the jury believe from the evidence in the case that defendant's engineer used reasonable care to avoid the accident after he discovered plaintiff's husband on the track, *or by the exercise of ordinary care might have seen him in a position of imminent danger*, then the plaintiff is not entitled to recover, and the verdict will be for defendant; and by the term 'reasonable care,' as used in this instruction, is meant such care as an ordinarily careful man would use under the same or similar circumstances.

"3.   The court instructs the jury that *if* defendant's engineer *saw plaintiff's husband on the track in time to stop the train before reaching him, yet he* had a right to presume that the deceased was in the possession of his mental faculties and would get off the track in time to escape danger, until something occurred to indicate to the contrary; and if *such was the case and* the jury believe from the evidence in the case that after the engineer had, *by the exercise of ordinary care*, reason to believe that the deceased was not aware of the approach of the train, and was therefore in peril, he used all efforts in his power to stop the train, but was unable to do so in time to avoid the accident, then the plaintiff is not entitled to recover, and the verdict will be for the defendant."

Of the above instructions the court gave instruction number 1, as asked, but modified instructions numbers 2 and 3 by inserting therein the words in

italics.   To the action of the court in changing said instructions before giving the same, defendant excepted.

The defendant also asked the following instruction: "The court instructs the jury that there is no evidence in this case tending to show any negligence on the part of the defendant's engineer in failing to discover the deceased on the track sooner than he did actually discover him," which the court refused to give, and to which action of the court the defendant excepted.

I.   It is strenuously argued that the circuit court should have sustained a demurrer to the evidence.   If this contention be sustained it will be unnecessary to examine the other assignments of error.

The first essential inquiry, obviously, must be to ascertain and determine what were the duties of the defendant's trainmen on the morning and at the place plaintiff's husband was killed and how, if at all, they failed to discharge that duty, for, unless the law cast upon them a duty, there could be no negligence.

That the deceased was a trespasser and guilty of negligence is perfectly plain, but conceding this, as all fair minded men must, did the servants of defendant owe him no duty whatever?   Will it be seriously asserted that merely because the deceased walked upon this open track where many others constantly did the same thing, with the presumed knowledge of defendant and its servants, he could be run down and crushed without notice or warning and without effort on the part of the employees in charge of the train to prevent his destruction?   This must be answered by a reference to the time and place.

While the track belongs to the railroad company and it may run as many trains as it sees fit and as fast as it may desire as a general proposition, it is now

firmly established, in this state, that it must observe a proper regard for human life in running through towns and populous neighborhoods and at those places on its road where by the forbearance and tacit consent of the company itself, persons are in the habit of walking or riding over, or along, the track, even where there are not public crossings.

The plaintiff's evidence was that the track from the eastern limits of Kansas City was straight and level for two thousand feet to the place of the accident, that the accident occurred about 6:45 A. M. of September 2, 1892; that it was a bright, clear morning; that the track, at this point and west, ran through a thickly settled neighborhood; that large industries were maintained along its route, and it was and had been for years the custom of the workmen and other laborers in the adjacent garden tracts in these bottoms to walk on this track about this hour of the morning in going to their work, and moreover that almost immediately at the point where deceased was struck there was a private crossing planked over by defendant for neighborhood use. The plaintiff's husband and his companion Williams, with their dinner buckets in hand, were walking down this track going to the Milwaukee railroad to transfer grain. It is not questioned that they could readily be seen by the employees of the train for two thousand feet. Such was the time and such the place.

Under such circumstances we do not deem it debatable that the servants of the defendant owed the deceased and Williams the duty of warning them if they saw them, or, by the exercise of ordinary care could have seen them, in time to enable them to get off the track, without injury, even though they were trespassers. How was that duty observed?

The engineer admits that he might have seen the

two men on the track as he turned the curve two thousand feet away; he admits that he saw the Chicago & Alton train moving west and only about fifty or one hundred feet south of the Missouri Pacific and that from the point from which the engineer was looking the Alton train and the two men would appear very close together, and if he saw one he would almost inevitably see the others. The men were on the track all the time, and the engineer says "when we turned the curve west of which the accident occurred *if the man had been on the track and I had looked down the track I could have seen him.* It is possible *that I did see him when we turned the curve.* I know I did not give any signal until I was within four hundred or five hundred feet of him." He says then that he gave a crossing signal and waited from two to four seconds to see the effect and noticing that they did not heed it, he then began his danger signals and continued them until he struck Chamberlain, the deceased. But the other witnesses contradict him as to his giving the crossing signal. The great weight of the evidence on this point is that he never gave any signals until he sounded the sharp alarm signals and then, to use the language of the witnesses, "he was right upon them," and it was too late to permit an escape of the deceased.

If, as the engineer admits, *he possibly saw them* when two thousand feet away walking immediately on the track and, knowing the great speed at which he was moving upon them, he waited till he was within a few feet of them before giving them any warning whatever, as most of the witnesses assert, then his conduct can hardly be characterized as less than criminal. Or if, on the other hand, knowing that these workmen were in the habit of walking on the track in this neighborhood and had been for years, and that by looking he could see these men walking ahead of him for two

thousand feet, and he neglected either to look himself, or require his fireman to look, if his engine required his own attention, during all the time he was running through said bottoms, then he failed to exercise that ordinary care which a reasonable and prudent man would have exercised under the circumstances to avoid killing the deceased. There was ample evidence to justify the jury in drawing either inference from the evidence and if they could then the court correctly submitted it to them.

It is argued, however, that the engineer seeing adults on the track had a right to presume they would consult their own safety and get off in time to escape harm.

But the engineer does not attempt to shield himself behind this presumption. He only says he first saw them when in from three hundred to five hundred feet and that he then sounded the crossing signal which they did not heed and he then gave the other alarms. He was not relying upon their exercising ordinary care in getting off in time.

But, indulging this presumption, the engineer would not have been justified in acting upon it after he discovered they had not heard the rumbling of his train or that their attention had been attracted by the Chicago & Alton train. When they gave no sign of having heard the approach of his train "something had occurred" which would lead an ordinarily prudent man to believe they had not heard his train, and he was bound to know they were momentarily coming nearer and nearer to a great peril. It became then his imperative duty, whatever he might have presumed, or thought they would do, *up to that time*, to use every means in his power consistent with the safety of those on board of his train, to avert the threatened peril to human life and limb, and it was eminently proper to

submit to the jury whether he exercised ordinary care in endeavoring to prevent the injury to the deceased, under all the circumstances.

We think the court very properly overruled the demurrer.

II.   Defendant's counsel propounded to the engineer Raymond the following question:   "Is it not a common thing when you see people, at any part of the track, walking along the track, for them to continue to walk on the track after you sound the alarm and you know they hear it, until the train gets close on them, and then get off?"   To which plaintiff objected and the objection was sustained and defendant excepted.

The purpose of this question after the facts were developed in this case does not seem plain.   It is evident that the deceased was not bound by what others might have done.   Moreover, in the hypothesis stated in the question it was assumed that the persons on the track heard the alarm or train approaching, whereas in this case the great preponderance of the evidence tended to show deceased never heard an alarm until it was too late to escape from the track.   The engineer says he "always thought and always will think" .they heard his signal, *but thought it was the Chicago & Alton train that whistled*, and did not for that reason pay any attention to it.   The proposed evidence was irrelevant and immaterial.

III.   Having held that the evidence justified a submission of the case to the jury, we discover no error in the first instruction.   It is not open to the objection of being a comment on the evidence.   It advised the jury that if they found that deceased was killed in a thickly settled neighborhood, and that large numbers of people were in the habit of walking on the track at this place, and it was near a crossing and the track was straight and level for a long distance and

that deceased was on said track and that the trainmen either saw or by the exercise of ordinary care could have seen him in time to have averted the danger and failed to exercise that care, then the defendant was liable.

The court properly placed the burden on plaintiff of showing that the place and custom of the people in walking upon it was such as negatived the presumption of a clear track and hence required a lookout by those managing the train.   In so doing it conformed to the law as announced in many cases.   *Fiedler v. Railroad*, 107 Mo. 645; *LeMay v. Railroad*, 105 Mo. 361; *Frick v. Railroad*, 75 Mo. 602;   *Guenther v. Railroad*, 108 Mo. 18.

IV.   There was no error in the interlineation in defendant's second instruction.   It simply required it to conform to the well established rule in this state that when the law casts upon the trainmen the duty of looking out to prevent danger they must exercise ordinary care to discover persons upon their tracks in populous neighborhoods or at places where people are known to make a habit of crossing.   In such cases a failure to see is not alone sufficient but a failure to see after the exercise of ordinary care to see.

. . V.   Counsel criticises an amendment of his third instruction by the court as misleading and its purpose as unintelligible.

It is not perhaps happily worded.   The effort to save time on the trial of a case often causes the courts to interline instructions and they are not such as would be carefully worded if more time were taken.   The instruction prior to its amendment announced the simple proposition that the engineer had a right to presume deceased was in possession of his faculties and would get off the track in time to escape danger until something occurred to indicate to the contrary.

The court obviously thought that before the engineer could presume these things he should first see the man on the track in time to stop his train, and we think it was right. The instruction then proceeds "if such was the case." These words counsel says are misleading. A fair construction of the phrase we think will make it relate to the fact that something occurred to indicate that deceased had not heard the trains approach, and if from that time on the engineer exercised ordinary care to prevent injury to deceased plaintiff could not recover. So read we see no error in it. *The sounding of the whistle in due time would not have delayed the train in the least. If it had been sounded when the engineer first saw deceased, or should have seen him, the strong probabilities* are that a life would have been saved, and this suit avoided.

IN BANC.

GANTT, J.—Since the promulgation of the foregoing opinion in this case by division number two of this court *Sinclair v. Railroad*, 133 Mo., has been decided in division number one in which the language employed in *Reardon v. Railroad*, 114 Mo. 405, is quoted with approval to the effect that "when plaintiff stepped upon the track, it was the engineer's duty to warn him, and this he did. The engineer had a right to presume that an adult would at once step off the track and avoid danger. He was not required to stop his train until he saw plaintiff was in a position of danger or peril." That and other cases are cited to fortify the conclusion reached "*that when no conditions intervene to confuse, or to prevent hearing a signal, and knowing its object,* it will be sufficient, if given in time for the trespasser to leave the track safely," and "that the duty of the engineer (to stop his train to avoid

killing deceased) arises as soon as he knows or by proper care ought to know that deceased does not regard the warning signal."

This statement of the law we think is entirely correct and conforms to the language, and reasoning of the divisional opinion in this case.

The plaintiff's first instruction as applied to the facts of this case could not, however, have been prejudicial because the plaintiff undertook to show, and the great preponderance of the evidence does show that *the danger signals were not given when the engineer first saw deceased on the track*, and that by reason of the proximity of the train to deceased when he says he first saw him, and the great speed at which it was running, and the uncontroverted fact, *that deceased did not heed the signal*, the deceased had already become in imminent peril, and it was the engineer's duty to have used all the means at hand, consistent with the safety of his passengers and the trainmen, to stop his train and avert the killing.

But the instruction would not be proper in all cases, as the signal if given in time would be all that was required to apprise a trespasser, until it is seen he apparently does not hear it. The engineer is not required to stop his train if the trespasser is far enough away to warn him, and a timely warning is sufficient until it is seen that for some cause it is not heeded; then it is his duty to avoid killing, even a trespasser, if by the exercise of ordinary care it can be done. The judgment is affirmed. BRACE, C. J., MACFARLANE and BURGESS, JJ., concur; BARCLAY, SHERWOOD, and ROBINSON, JJ., dissent.

PER CURIAM.—The foregoing opinion filed in division number two, as modified *in banc* is adopted as the opinion of the court *in banc*. BRACE, C. J., MACFAR-

LANE, and BURGESS, JJ., concurring with GANTT, J., therein. BARCLAY, SHERWOOD, and ROBINSON, JJ. dissenting. The judgment of the circuit is therefore affirmed.