LEVELSMEIER, Respondent, v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, October 31, 1905.

1. STREET RAILWAYS: Negligence: Injury on Private Right of Way. A motorman, in charge of an electric car of a street railway company running on the company's private right of way, has a right to assume the track is clear and is not bound to keep a lookout for trespassers on the track, unless such track has been used by pedestrians for a considerable length of time.

2. ——: ——: ——: Use by Pedestrians. In an action against a street railway company for injuries received by the plaintiff's son while trespassing on the defendant's private right of way, it was error to instruct the jury authorizing a re-

covery, if the motorman could have seen him on the track in time to have prevented the accident by ordinary care, where the instruction omitted the consideration of the question whether the track had been used by pedestrians so as to charge the motorman with the duty of keeping a watchout.

3. ———: **Private Right of Way: Secondary Evidence.** In an action for injuries received by the plaintiff from collision with defendant's motor car, the question as to whether the place was on the defendant's private right of way was collateral to the main issue, and secondary or oral evidence was admissible to show the fact.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

REVERSED AND REMANDED.

*Jefferson Chandler* and *T. M. Pierce* for appellant.

The duty to take precaution to prevent accident is not to be extended to apply to tracks laid over a right of way acquired through private property. Booth on Str. Rys., 290; Harvey v. Railroad, 186 Ill. 282; 51 N. E. 857; Cooper v. Johnson, 13 N. Y. Sup. 151. The court erred in submitting the case to the jury on the ground that they might find it was negligence in defendant's motorman in presuming that Louis Levelsmeier would exercise ordinary prudence and care to look out for himself. One is not guilty of negligence in presuming that plaintiff would exercise prudence and ordinary care to look for an approaching train. Behen v. Transit Co., 186 Mo. 439. The private right of way of defendant is not a playground for children, and the motorman was not bound to anticipate that a boy of eight, near the car, would endanger himself by being so near the car as to be hit. Mt. Adams Co. v. Cavanga, 6 O. Ct. Rep. 606.

*Ernest E. Wood* for respondent.

BLAND, P. J.—On August 20, 1903, plaintiff's eight-year-old son, near the crossing of Ella avenue over

defendant's private right of way, in the city of St. Louis, was struck by one of defendant's cars traveling north, and severely injured. Plaintiff sued to recover for loss of the services of his boy and for nursing and caring for him, alleged to have been made necessary by the injury. The jury found for plaintiff and assessed his damages at twenty-five hundred dollars.

The evidence is that plaintiff's son and another boy, on the morning of August 20, 1903, were walking in single file, about twenty-five feet apart, on the end of the cross-ties of defendant's track and private right of way, and a car traveling north struck plaintiff's son, hurling him from the track. He was picked up unconscious with a deep gash cut in the back of his head from which blood was flowing copiously, and his hip and back were bruised. The other boy stepped off the track and escaped injury, though he testified he neither saw nor heard the car until it had knocked the other boy off and passed him a considerable distance; that he did not step off the ties to avoid the car but to pick up a stick of wood he saw near the track.

In respect to the injuries, plaintiff stated that before the accident his boy was a healthy and well-appearing boy, and had never been sick, but that since the accident he had not had a well day; that formerly his color had been rosy and ruddy, but since the accident his complexion had been yellow.

"Q. Speaking about his appearance, how does he hold his head these days? A. He always goes with his head down, first one way and then the other, keeps his head first one way and then the other all the time.

"Q. Unless his attention is called to it, is that true? A. Yes, sir.

"Q. What troubles has he had? A. Well, he has epileptic fits.

"Q. State what you have noticed concerning his physical condition from the day of this accident? A. Just by his acts, is that the question?

"Q.  Yes.  A.  He takes spells that he gets unconscious.

"Q.  He gets what?  A.  Gets unconscious, and especially at night he wets all over himself, we have to keep a special bed for him, and dress him sometimes as high as three or four times a night.  These things occur every night and he takes them lots of times during the day.

"Q.  What does he do?  A.  He gets unconscious and foams at the mouth and he is perfectly unconscious, bites his teeth, it is sometimes all that I or my wife can do to hold him.

"Q.  How often do these spells come?  A.  Sometimes they come on two or three times a night and sometimes they come on during the day; of course sometimes they are much lighter than at other times; sometimes a wet towel and a basin of cold water that we have always there will revive him; other times it takes thirty minutes to three quarters of an hour.

"Q.  Now, have these spells become more frequent as the time goes on from the time of the accident?  A. They have become more frequent.

"Q.  Did you notice them soon after the accident or not?  A.  Not right away, but I suppose it was a month or six weeks that he had the first spell like that.

"Q.  And have they been continuous from then on? A.  Yes, sir.

"Q.  Besides the injury on his head what other injury, if any, did he receive?  A.  He had an injury in his back near the—just above the hip or the waist.

"Q.  What kind of an injury was that?  A.  It was a big blue place there about as big as the palm of my hand with the skin knocked off just enough for it to bleed and the rest of it about the hip like and toward the back was black-blue, you might say."

Dr. R. H. Barnes testified that he examined the boy on August 29, 1903, and found a scalp wound, unhealed, on the back of his head, bruises on his body and his

general health seemed to be impaired. Witness further testified as follows:

"Q. When did you next examine him? A. I saw him some time in November, I believe that was the next time, they complained of his having some spells and I didn't make a diagnosis, but at once suspected epilepsy from the description of them; since that time I have learned they were epilepsy.

"Q. What have you learned about it, state fully about the condition of this boy? A. To-day the boy has what is known as the Jacksonian form of epilepsy.

"Q. What is that? A. That is a form of epilepsy from some irritation to the brain, most commonly caused from injuries.

"Q. How serious is that? A. The chances of recovery are very little, in fact, it is a progressive disease, and the man generally degenerates into a worse condition, into some form of insanity, or into idiocy more commonly, and it generally affects the life of the party, in fact, an epileptic that lives over forty or fifty years is not common, generally their lives are shortened to a very great extent."

Witness also testified that trephining the skull and removing the pressure would be the proper treatment for the boy, and that this operation would cost from three to five hundred dollars.

Dr. Otto F. Claus testified, substantially, as did Dr. Barnes, in respect to the injury, only he stated that the cost of the trephining operation would be from three hundred and fifty to seven hundred dollars, and that probably years of treatment would be required after the operation. He very judiciously added that most of the patients who submitted to this operation did not recover.

Mrs. Mary Denton, the only eyewitness to the accident, testified that she heard one tap of the car bell when the car was eighty or ninety feet south of where the boys were on the track; that her view of the track

at that particular moment was obstructed by a building and she did not see the car until it was within about fifty feet of the boys; that it was running at a speed of about seven miles an hour and did not increase or lessen its speed before or after hitting the boy but kept right on at the same speed as though nothing had happened.

Plaintiff's evidence is that a car running at a speed of seven miles an hour could be stopped in from twenty-five to thirty feet. The evidence shows that the two boys were walking along with their heads down as though they were looking for something on the ground. The evidence for plaintiff further tends to show that on account of the bad condition of the street running along defendant's right of way, the people in the neighborhood of where the accident occurred were, at the time of the accident, and had been for a long time before, in the habit of walking on the defendant's track, and that there were no signs up at that time warning people to keep off the track; that such signs had been up but were torn down in the previous spring and were not replaced until after the accident.

Defendant's evidence is that signs were up at the time of the accident, warning all people to keep off the track and that it was a private right of way. Its evidence also tends to show that the right of way is the private property of the defendant company and that pedestrians have never been in the habit of traveling on it, and never did travel on it by the consent of the defendant. The medical testimony offered by defendant was diametrically opposed to that of the plaintiff in regard to the results of the injury.

The motorman in charge of the car, which supposedly struck the boy, testified that no boys were on the track at the time and place the boy was hurt; that he saw three or four boys playing in a small lot adjacent to the track but if any of them got in the way of the

114 app—27

car it was after its head end had passed them and he was not aware of it and did not know or hear that any one had been hurt until sometime afterwards.

1.   The refusal of the court to give a peremptory instruction to find for defendant is the first assignment of error.   There is no allegation in the petition of willful injury or that the motorman in charge of the car had actual knowledge of the boy's perilous position.   On the assumption that the boy was injured on its private right of way, defendant contends that it was not required to use precaution to prevent accident and is not liable, unless the motorman had actual knowledge of the boy's peril and then failed to use ordinary care to stop the car to avoid striking him.   To the contrary, the plaintiff insisted that even if it be conceded the boy was a trespasser upon the defendant's right of way, if the motorman saw, or by the exercise of ordinary care could have seen the boy in time to avert the injury, under the laws of this State, it was his duty to do so.   In support of defendant's contention it cited Missouri, Kansas & Texas Ry. Co. v. Haltam, 95 Tex. l. c. 115; Fort Worth & Denver City Ry. Co. v. Shetter, 94 Tex. 196; Texas & Pacific Ry. Co. v. Breadow, 90 Tex. 26; Gulf, C. & S. F. Ry. Co. v. Townsend, 82 S. W. (Tex.) 804.   In addition to these citations supporting defendant's contention, the following Missouri cases are in point:   Williams v. Railway, 96 Mo. 275, 9 S. W. 573; Rine v. Railroad, 100 Mo. 228, 12 S. W. 640; Curley v. Railway, 98 Mo. l. c. 19, 10 S. W. 593; Barker v. Railway, 98 Mo. l. c. 53, 11 S. W. 254; Berry et al. v. Railway, 124 Mo. l. c. 289, 25 S. W. 229; Barney v. Railway, 126 Mo. l. c. 389, 28 S. W. 1069; Morgan v. Railway, 159 Mo. l. c. 278, 60 S. W. 195; Heiter v. Railway, 53 Mo. App. 331; Riley v. Railway, 68 Mo. App. 652.

In Scullin v. Railroad, 184 Mo. at page 707, cited and relied on by plaintiff, is the following paragraph:

"Even if plaintiff had been a trespasser on the tracks at this point, *and he was not,* still if the   con-

ductor saw, or by the exercise of ordinary care could have seen him in time to have averted the injury to him, it was his bounden duty in the circumstances and at the place to have done so, and averted the injury to plaintiff. This is too well-settled law in this State to require any further discussion of it. [Hanlon v. Railroad, 104 Mo. 381; Chamberlain v. Railroad, 133 Mo. 587; Fiedler v. Railroad, 107 Mo. 645; Kellny v. Railroad, 101 Mo. 67; Morgan v. Railroad, 159 Mo. 262; Sinclair v. Railroad, 133 Mo. 233; Klockenbrink v. Railroad, 172 Mo. 687; Fearons v. Railroad, 180 Mo. 208; Kreis v. Railroad, 131 Mo. 544.]"

In Chamberlain v. Railroad, 133 Mo. 587, 33 S. W. 437; 34 S. W. 842, it was held:

"Where a train is running through a populous neighborhood just outside the city limits, where workmen have for years been accustomed to use the track in going to and returning from their work, and the company's servants in charge of the trains see, or by the exercise of ordinary care, may see a person on the track in time to avoid a collision, but fail to use such care, the company will be liable, though the person injured was a trespasser."

The case of Fiedler v. Railway, 107 Mo. 645, 18 S. W. 847, is like the Chamberlain case as is also the case of Kellny v. Railroad, 101 Mo. 67, 13 S. W. 806; Dahlstrom v. Railway, 96 Mo. 99, 8 S. W. 777; LeMay v. Railway, 105 Mo. 361, 16 S. W. 1049; Lynch v. Railroad, 111 Mo. 601, 19 S. W. 1114; Morgan v. Railroad, 159 Mo. 262, 60 S. W. 195; and Kreis v. Railway, 131 Mo. 533, 33 S. W. 64, 1150.

The general rule is aptly stated by Fox, J., in Fearons v. Railroad, 180 Mo. l. c. 222-3, 79 S. W. 394, as follows:

"Whenever the motorman or engineer, in the operation of its cars, before reaching a point along the line of its railway, has reasonable ground to expect or anticipate the presence of persons so near the railroad

track as to endanger them, then the law, through its high regard for the preservation of human life, requires and demands such operatives to be on the alert, and to keep a lookout for the realization of the anticipation or expected presence of the person."

In the Scullin case, confidently relied on by plaintiff, the plaintiff was traveling on Front street, a public highway in the city of St. Louis, and walking in a path ordinarily used by pedestrians, when he was struck by defendant's train. Scullin was not a trespasser and hence the case is not authority for plaintiff's contention. Nor has plaintiff, with all his ability and industry, cited us one case in support of his contention, nor have we found one holding that a motorman running an electric car over a track laid on the company's private right of way is bound to keep a lookout ahead for trespassers on the track when he has a right to assume the track is clear. On the evidence that the track was used by pedestrians and had been so used for a considerable length of time, we think the court did not err in refusing defendant's peremptory instruction.

2. The case was submitted to the jury on the theory that the defendant's right of way was private and that it was the duty of the defendant's motorman to keep a lookout ahead for persons that might be on the track, leaving out of view the question as to whether or not the track had been habitually used by pedestrians, as will appear by the following instruction given for plaintiff:

"The jury are instructed that even if you should find from the evidence that Louis Levelsmeier was negligent in getting upon the track of the defendant company at the time of the accident, yet the court further instructs you that such negligence will not of itself prevent a recovery in this case by the plaintiff, provided you further find from the evidence that the said Louis Levelsmeier was upon the track of said defendant company at such a time and place as to enable the motor-

man of the defendant's car, by the exercise of ordinary care, to have seen him in a position of danger while the car was yet at a sufficient distance from the said Louis Levelsmeier that it might have been stopped by the motorman without striking the said Louis Levelsmeier had the said motorman exercised ordinary care and diligence in attempting to stop the car after the danger of the said Louis Levelsmeier became apparent to him, or ought to have become apparent to him in the exercise of ordinary care."

In view of plaintiff's evidence that the track had been daily used by pedestrians for a considerable length of time prior to the injury and up to the time it occurred, we think the case properly falls within the doctrine of the Fearons case and others cited above and that it should have been instructed along the line of these decisions and in harmony with them.

3. Plaintiff's counsel insists that there was no competent evidence in the record to show that the right of way was the private property of the defendant company. An officer of the company testified that it was a private right of way and had been acquired by purchase from a railroad corporation which used it as a narrow-gauge railroad. This was sufficient; and the oral evidence was admissible for the reason that whether or not it was a private right of way was a fact collateral to the main or principal fact in issue and for this reason might be shown by secondary evidence.

We have indicated the theory upon which we think the case should have been tried, and as the judgment must be reversed for error in instructions, we refrain from considering other assignments of error found in the defendant's brief.

Reversed and remanded. All concur.