RINE v. THE CHICAGO & ALTON RAILROAD COMPANY, *Appellant.*

1. **Railroad:** NEGLIGENCE : PERSON WRONGFULLY ON TRACK. Where the person, injured and killed by the locomotive and tender of a railroad company, was wrongfully on the track at the time of the accident, the liability of the company must be limited to the negligence of its servants after they knew deceased was in a dangerous and exposed position.

2. **Negligence, Evidence of.** Evidence of negligence need not be direct and positive; it may be inferred from the surrounding circumstances.

3. ———: DEMURRER TO EVIDENCE. A demurrer to the evidence admits every fact which the jurors may infer if the evidence were before them, and it should be sustained only when the evidence thus considered fails to make proof of some essential averment.

4. ———: ———. The evidence in this case examined and found to have been sufficient to warrant the jury in inferring that defendant's fireman knew that deceased was on the track and that too in time to have saved his life.

5.  Railroad: R. S. 1879, SEC. 2121: "SERVANTS." The statute, Revised
    Statutes, 1879, section 2121, giving a penalty of five thousand dollars.
    whenever any person shall die from an injury occasioned by the
    negligence of "any officer, agent, servant or employe whilst running
    or managing any locomotive, car or train of cars," includes the
    negligence of any and all servants who are engaged in running or
    managing said locomotive, cars or train of cars.

*Appeal from Saline Circuit Court.*—HON. J. P
STROTHER, Judge.

AFFIRMED.

*G. B. Macfarlane* for appellant.

(1) Plaintiff's second instruction was erroneous in
that it directed the jury, in effect, that if defendant's
employes saw Rine on the track, or switch, in time
to have stopped the engine with safety, and failed to
do so, then their negligence was such as to render
defendant liable. The negligence to have charged
defendant with liability must have occurred "when
and after they actually became aware that deceased
was in an exposed and dangerous position." This
instruction is directly in conflict with the decision of this
court when this case was before it. 88 Mo. 400. There
was no evidence that deceased was in an exposed and
dangerous position while on the main track; in fact, he
was then in a place of perfect security, and if he had
continued thereon he would have been unharmed. (2)
Defendant had a right to instructions placing before
the jury every legal phase of this case which was justi-
fied by the evidence. *Bell v. Railroad*, 72 Mo. 58;
*Chan v. Reid*, 18 Mo. App. 115. Defendant's fifth and
tenth instructions refused by the court should have
been given; they fairly presented the question of con-
tributory negligence to the jury. (3) Defendant's
fourth instruction should have been given. A train
man has the right to presume that a trespasser on the

track of a railroad, who sees the train approaching, will leave the track in time to avoid his own injury. *Kelly v. Railroad*, 72 Mo. 138; *Maloy v. Railroad*, 84 Mo. 270; *Railroad v. Graham*, 12 Am. & E. Ry. cases, 77; *O' Donnell v. Railroad*, 7 Mo. App. 190; *Bell v. Railroad*, 72 Mo. 62. (4) The death of William Rine was brought about by his own negligence directly contributing thereto as appears from plaintiff's evidence in chief, and the jury should have been peremptorily instructed to find for the defendant. *Powell v. Railroad*, 76 Mo. 80; *Lenix v. Railroad*, 76 Mo. 86; *Yancy v. Railroad*, 93 Mo. 436. (5) (*a*) Section 2121, under which this suit was brought, is a penal statute designed to insure the safety of the public by requiring of all railroad companies the employment of careful and competent servants to run, conduct and manage locomotives and trains, and no recovery can be had unless the pleadings and proof come strictly within the terms and conditions authorizing it. *Parish v. Railroad*, 63 Mo. 284; *Barker v. Railroad*, 91 Mo. 86; *Keith v. Railroad*, 1 Gray, 614. (*b*) The statute is in derogation of common law and must receive a reasonably strict construction. *Jackson v. Railroad*, 87 Mo. 422; Sedgwick, Const. Stat. 267 and note. (*c*) The statute is not only in derogation of the common law, but imposes a penalty on the employer for the negligence of its servants; the statute would otherwise deprive a defendant of the constitutional right to have the damages assessed by a jury. Five thousand dollars is imposed as a penalty and not, strictly speaking, as damages. Constitution Mo., sec. 18, art. 2; *Railroad v. Humes*, 115 U. S. 512; *Barnett v. Railroad*, 68 Mo. 56. (*d*) Sections 2121 and 2122 should be read together and such construction given them as will make them harmonious and consistent. Section 2121 imposes a penalty on the master for a misconduct of a servant while "running, conducting or managing" an engine; section 2122 allows a mother to

recover damages for the death of her son caused by the negligence of any employe of defendant while in the discharge of his duty. *Proctor v. Railroad*, 64 Mo. 112; *Com. v. Railroad*, 133 Mass. 384; *Com. v. Railroad*, 126 Mass. 472. If the negligence of the fireman is to be attributed to the corporation, then plaintiff's action, if she had one, was under section 2122 of the statutes, and the instruction to assess damages at five thousand dollars was improper. (*e*) That section 2121 was intended to apply only to the servant in charge of the engine is apparent from the servants designated therein as to other carriers; the liability of the owner of a stage coach is confined to the driver; the owner could not be charged under this section with the negligence of the guard or the hostler. There was no evidence that the engineer saw deceased, nor is there evidence from which a jury could infer that he could have seen him from the position he was shown to occupy.

*J. D. Shewalter* for respondent.

(1) If the negligence of the defendant directly contributed to the injury—if after the agents and servants of defendants saw the deceased step from the main to the sidetrack, as if to escape the approaching engine, and after they saw his perilous condition they could have stopped the engine with safety, but failed to do so, the defendant is liable; if they did not see him defendant is not liable. This is the sole legal question in the case under the former decision. *Rine v. Railroad*, 88 Mo. 392. The instructions on both sides squarely submitted the case on this theory. (2) The second question is, was there sufficient evidence under all the facts and circumstances proved in this case to warrant the submission of the case to the jury on the aforesaid theory? (3) On a peremptory instruction, like a demurrer to the evidence, the court is required to make all natural and logical deductions from the facts proved,

and if so viewed there is, any evidence to support a verdict such instruction cannot be given or demurrer sustained. A demurrer to the evidence admits not only the facts proved, but all reasonable and logical deductions from those facts. *Wilson v. Board of Education*, 63 Mo. 137, p. 140; *Buesching v. Gaslight Co.*, 73 Mo. 219. All the evidence shows the track level, no obstruction to sight, the fireman on the tender having full view, the engineer at the window, and that he could see the middle of the track, by defendant's own witness, Stephens, two car-lengths ahead; being able they are presumed to have seen him; if not, that fact being within defendant's knowledge, it should prove the same.

BLACK, J.—This is the second appeal prosecuted by the defendant in this case; the first is reported in 88 Mo. 392. It was then and is now conceded that young Rine was wrongfully upon the track at the time and place when and where he was killed, and that he was guilty of negligence in going upon and remaining upon the track. In view of these facts we held on the former appeal that the defendant's liability must be limited to negligence on the part of the fireman and engineer after they knew that Rine was in an exposed and dangerous position, and that, when they had such knowledge, it became their duty to use all the means at their command to save his life. The case was tried pursuant to these directions on instructions given at the request of the plaintiff and others given at the request of the defendant, to which no substantial objections are made.

The point is now made and much relied upon for a reversal that there is no evidence tending to show that the fireman or the engineer saw Rine on the track in time to have avoided the calamity. While the evidence is, in a general way, the same as on the former appeal, it is not the same upon the question of knowledge of

Rine's presence on the track from the fact that the fireman and engineer were not called as witnesses on the second trial, by either party.

The evidence now is, in substance, this: Rine came into Corder on the local freight train from the east. The depot at that place is on the north and the warehouse on the south side of the main and two sidetracks. Part of this freight train was left standing at the depot on the main track; and, while the evidence is not direct, it seems some of the cars were removed to the outer sidetrack, and left standing at the warehouse. The engine and tender then went to a coal shaft, about a quarter of a mile west of the depot, and in the meantime Rine went to the village. On his return he came to a point where the highway crosses the main railroad track, which point is five hundred feet west of the depot. He then went east towards the depot on the main track some fifty or sixty feet to a switch attachment, and then looked back and must have seen the engine and tender on their return, for they were not more than ninety or one hundred and fifty feet distant from him. He stepped on the outer sidetrack and walked on with his back to the approaching tender and engine, the tender being the nearest to him, for a distance estimated at sixty, eighty and one hundred and twenty feet, when the tender ran over him. The engine and tender were going at the rate of eight or ten miles per hour and could have been stopped in a distance of from fifteen to twenty-five feet. No effort was made to check or stop them. The engineer was at his proper place on the north side of the cab, and could have seen Rine before he got on the sidetrack, but not after that except by going to the south side of the cab. The fireman was on top of the tender with something in his hand breaking coal, and could have seen Rine at any time after the latter got on the main track at the road crossing.

Rine evidently stepped upon the sidetrack suppos-
ing the engine and tender would go back to the depot
on the main track. There can be no doubt that he was
in a dangerous position from the moment he stepped
upon the sidetrack, and the question is, whether the
foregoing evidence tends to show that the fireman or
engineer saw him upon that track.

This question must be determined from all the cir-
cumstances. There were no obstructions, such as cars,
on any of the tracks between the coal shaft and the
depot or warehouse. The switch seems to have been
left open by design, doubtless so the engine and tender
could go back to the warehouse and get the cars left at
that place. The fireman must have known this switch
was open, certainly so when he passed over it. He
knew the cars were standing on the track at the ware-
house and that he would come in contact with them.
It was his duty to guard against a collision with the
standing cars, and it is reasonable to believe that he
had an eye in that direction. The accident happened
at the depot while the engine and tender were going
back and forth over the tracks and common informa-
tion teaches us that the employes would, in the dis-
charge of their ordinary duties, be on the watch.

Evidence of negligence need not be direct and posi-
tive. "In the nature of the case, the plaintiff must
labor under difficulties in proving the fact of negligence,
and, as that fact itself is always a relative one, it is sus-
ceptible of proof by evidence of circumstances bearing
more or less directly upon the fact of negligence, a kind
of evidence which might not be satisfactory in other
classes of cases open to clearer proof." 1 Shear. &
Red. on Neg. [4 Ed.] sec. 58. A demurrer to the evi-
dence admits every fact which the jurors may infer
from the evidence before them, and should be allowed
only when the evidence thus considered fails to make
proof of some essential averment. *Noeninger v. Vogt*

88 Mo. 592 and cases cited. All the circumstances surrounding the accident are to be considered, and, when this is done, we are of the opinion that there is evidence from which the jury could well find that the fireman at least saw Rine on the track and that, too, in time to have saved his life.

The principal objection made to this conclusion is, that as the servants of the defendant were not bound to be on the watch for Rine, they ought not to be held to have had knowledge that he was on the track simply because they were in a position, and had an opportunity to see him. Had the court told the jury that an opportunity to know was equivalent to knowledge, then there would be force in the objection; but the court did not so instruct. Knowledge, like actual notice, may be proved by direct evidence or it may be inferred from other facts and circumstances. When it is inferred from facts and circumstances it is actual knowledge, the same as when proved by direct evidence. An opportunity to know will, under some circumstances, go far to show knowledge, and, under other circumstances, it may be of little value. We think the plaintiff made out a *prima facie* case, one entitling her to go to the jury, and, as the defendant did not call those servants who could have given direct evidence, it has no one to blame but itself for any mistake on the part of the jury, if any they made.

The defendant makes the further point that it is liable only to pay the penalty of five thousand dollars, when the negligence is that of the servant who is the superior in command, namely, the engineer in the present case. The statute awards the penalty whenever any person shall die from an injury occasioned by the negligence of "any officer, agent, servant or employe, whilst running or managing any locomotive, car or train of cars." R. S. 1879, sec. 2121. This statute manifestly includes the negligence of any and all servants

who are engaged in running or managing the locomotive, car or train of cars. The fireman is as much within the contemplation of the statute as the engineer, or even the conductor. The sense of the law is too plain to admit of doubt, or to call for extended remarks.

The judgment is therefore affirmed. All concur; BARCLAY, J., in the result, except SHERWOOD, J., who dissents.