L. A. MOORMAN, Respondent, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 15, 1904.

1. **TRIAL PRACTICE: Demurrer to Evidence: Negligence.** **If** the defendant's evidence makes out a case of actionable negligence he is entitled to go to the jury notwithstanding the countervailing evidence of the defendant.

2. **PASSENGER CARRIERS: Stopping and Starting Train: Evidence.** A railway passenger carrier must allow its passengers a reasonable time to leave the train after it stops and exercises the highest degree of care so as not to suddenly jerk and jar the alighting passengers by starting its train.

3. ———: ———: ———. The evidence is reviewed and held sufficient to send to the jury the question of defendant's negligence in jerking its train under the rule that where a vehicle is under the management of the carrier and the accident is such as under the ordinary course of things does not happen, then negligence may be inferred in the absence of an explanation.

Appeal from Linn Circuit Court.—*Hon. Jno. P. Butler, Judge.*

AFFIRMED.

*Gardiner Lathrop, Samuel W. Moore, T. P. Burns* and *J. P. Gilmore* for appellant.

(1) The alleged movement of the car claimed by plaintiff to have caused the accident resulting in his injury was necessary and incident to the usual, ordinary and proper operation and management of defendant's train, and plaintiff can not, therefore, recover on account thereof. 4 Elliott on Railroads, 2476, sec. 1589; Fetter on Carriers, sec. 81; Saxton v. Railway, 72 S. W.

Moorman v. Railroad.

717; Wait v. Railway, 165 Mo. 612; Bartley v. Railway, 148 Mo. 124; Hite v. Railway, 130 Mo. 132; Pryor v. Railway, 85 Mo. App. 367; Guffey v. Railway, 53 Mo. App. 462; Portuchek v. Railroad, 74 S. W. 368; Erwin v. Railway, 94 Mo. App. 289; Olds v. Railroad, 172 Mass. 73; Heyward v. Railroad, 169 Mass. 466; Stewart v. Railroad, 146 Mass. 605; Choate v. Railway, 90 Tex. 82; Railroad v. Morris (Ky.), 62 S. W. 1012; Saunders v. Railway, 6 S. Dak. 40; Herstine v. Railroad, 151 Pa. St. 244; Stager v. Railway, 119 Pa. St. 270; Porter v. Railway, 80 Mich. 156; DeSoucey v. Railway, 15 N. Y. Supp. 108; Black v. Railroad, 2 App. Div. (N. Y.) 387; Bradley v. Railroad, 90 Hun 416; Cassidy v. Railroad, 29 N. Y. Supp. 724; Railroad v. Vinson (Ky.), 74 S. W. 671.    (2)    Defendant was pursuing its usual and ordinary course in the operation and management of its train at the time of the accident, which was a proper course.    No ordinarily prudent man would or could have foreseen the danger or position in which plaintiff placed himself, and the happening of the injury, therefore, was a mere accident, for which defendant can not be held liable.    Saxton v. Railway, 72 S. W. 717; Young v. Railway, 93 Mo. App. 267; Holt v. Railway, 84 Mo. App. 443; Hysell v. Swift, 78 Mo. App. 39; Guffey v. Railway, 53 Mo. App. 462; Brewing Assn. v. Talbot, 141 Mo. 674; Fuchs v. St. Louis, 167 Mo. 720; and cases cited.    (3)    Plaintiff was guilty of contributory negligence and is not, therefore, entitled to recover. Erwin v. Railway, 94 Mo. App. 289; Railway v. Overall, 82 Tex. 247; Guthman v. Railway, 53 N. Y. Supp. 139; Harrison v. Railway, 89 Mo. 236; Ashbrook v. Railway, 18 Mo. App. 290; cases cited under point 1.

*West & Bresnehen* for respondent.

(1)    The sudden movement of a passenger train, made without warning to passengers, when they are alighting, is negligence.    Sauter v. Railroad, 66 N. Y.

50; Keating v. Railroad, 49 N. Y. 673; Railroad v. Revalee, 1 Am. Neg. Rep. (Ind.) 427; Distler v. Railroad, 151 N. Y. 424; Railway v. Rowland, 1 Am. Neg. Rep. (Tex.) 363; Railroad v. Moore, 6 Am. Neg. Rep. (Ga.) 451; Devine v. Railroad, 1 Am. Neg. Rep. (Iowa) 41; Appleby v. Railroad, 9 Am. Neg. Rep. 582; Railway v. Elliott, 61 S. W. 726; 3 Thompson on Negligence, secs. 3002-3032. (2) The above cited cases are sufficient to show the general doctrine in cases like the case at bar. The appellate courts of this State are in line with the general doctrine as above stated. Madden v. Railway, 50 Mo. App. 666; Barth v. Railway, 142 Mo. 535; Smith v. Railway, 108 Mo. 243; Leslie v. Railway, 88 Mo. 50; Straus v. Railroad, 75 Mo. 185; Swigert v. Railroad, 75 Mo. 475; Clotworthy v. Railroad, 80 Mo. 220; Bucher v. Railroad, 98 N. Y. cited with approval in Fulks v. Railway, 111 Mo. 335; Condy v. Railway, 13 Mo. App. 587. (3) Appellant was not pursuing its usual and ordinary course in the operation and management of its train, at the time plaintiff was injured, but an unusual, negligent and careless course. The sudden starting of a passenger train without warning, while passengers are alighting, and before they have had sufficient time to get off, is an act of negligence likely to result in injury to passengers. The fact that the employees of the carrier can not anticipate the particular character of the injury which may be sustained, will not relieve the carrier from liability. Sauter v. Railroad, 66 N. Y. 50; Keating v. Railroad, 49 N. Y. 673; Railroad v. Revalee, 1 Am. Neg. Rep. 427; Distler v. Railroad, 151 N. Y. 424; Railway v. Rowland, 1 Am. Neg. Rep. 363; Barth v. Railway, 142 Mo. 535; Smith v. Railway, 108 Mo. 243; Leslie v. Railway, 88 Mo. 185; Swigert v. Railroad, 75 Mo. 475; Clotworthy v. Railroad, 80 Mo. 220; Railroad v. Moore, 6 Am. Neg. Rep. 451; Devine v. Railroad, 1 Am. Neg. Rep. (Iowa) 41; Madden v. Railway, 50 Mo. App. 666; Condy v. Railway, 13 Mo. App. 587.

SMITH, P. J.—Action to recover damages for personal injuries. The defendant's railway line extends from Marceline to Bucklin, over which it runs and operates its various kinds of trains. The plaintiff, desiring to go from the former to the latter place, for that purpose entered a car of one of the defendant's passenger trains at such former place where he was accepted as a passenger. The petition alleges, "that after said train upon which plaintiff was so being carried as aforesaid had reached the said town of Bucklin and when said train was within a short distance of defendant's said depot at Bucklin, and while said train was still in motion, and while said train was being slowed up for the purpose of stopping at defendant's said depot at Bucklin, the defendant's servants and agents, then and there in charge and control of said train, negligently and carelessly called said Bucklin station, and so then and there negligently and carelessly invited and directed the plaintiff (and the other passengers on said train) to prepare and make ready to get off of said train at its Bucklin depot. Plaintiff further states that after the defendant's said servants and agents so in charge and control of said train had so negligently and carelessly called said Bucklin station as aforesaid, and had so negligently and carelessly invited and directed the plaintiff (and the other passengers on said train) to prepare and make ready to get off of said train at its Bucklin depot, and before said train had come to a full stop, and while it was being run at a very low rate of speed, the plaintiff in the exercise of due care and caution on his part, and as he was so negligently and carelessly directed by defendant's servants and agents so in charge of said train, prepared and made ready to get off of said train at the said Bucklin depot, by raising from his seat in said car and by stepping into the aisle between the rows of seats in said car. Plaintiff further states that while plaintiff was so standing in the said aisle of the said car, so prepared and ready to get off of said car and while

plaintiff was in the exercise of due care and caution on his part, and after said train had come to a full stop, or had almost and about come to a full stop, at or near the depot platform at said Bucklin depot, and before the plaintiff had had a reasonable or sufficient time to get off of said train, the defendant's servants and agents so in charge of said train suddenly, negligently and carelessly and without any warning or notice to the plaintiff caused said train to be suddenly, rapidly and violently started and jerked forward, whereby plaintiff was thrown with great force and violence upon and against the small end or point of the handle of an umbrella, which umbrella plaintiff then and there held in his hand and whereby the other or larger end of said umbrella was thrust against one of the seats of said car, and whereby plaintiff's body was thrown with such great force and violence against the small end or point of said umbrella handle as to cause and produce a rupture and hernia of the plaintiff on the right side of plaintiff's abdomen in the inguinal region.''

The answer was a general denial and the plea of contributory negligence. There was a trial resulting in judgment for plaintiff and defendant appealed.

At the close of the plaintiff's evidence and at the conclusion of all the evidence, the defendant requested an instruction in the nature of a demurrer thereto, which was by the court denied. The vital question brought before us by the appeal is whether or not on the evidence adduced the plaintiff was entitled to a submission of the case to the jury.

It is the well-settled law of this State that a demurrer to the evidence admits every fact which the jury might infer if it were before them, and if, taken as true, it makes out a case of actionable negligence the plaintiff is entitled to go to the jury notwithstanding the countervailing evidence of defendant. Barth v. Railway, 142 Mo. l. c. 549; Rem v. Railway, 100 Mo. 228; Franke v. St. Louis, 110 Mo. 516.

The plaintiff's testimony was to the effect that after the purchase of his ticket he entered defendant's train and occupied a seat in the rear end of the second coach from the engine; that as the train approached Bucklin one of defendant's trainmen called out "Bucklin!" Just what occurred next after this will be best understood by reference to the following extracts taken from the plaintiff's testimony:

"Q. After the station was called, state whether or not the train slowed up? A. The train slowed up when it approached the station. Q. Tell the jury what, if anything, occurred after the train began to slow up? A. Well, the train began slowing up and I thought the train had stopped. My impression is that it stopped still and at that time I arose from my seat; and the gentleman sitting by me arose from his seat, and picked up, I think he had baggage with him, and stepped in the aisle and I arose and picked up my suit case and was standing just at the end of the seat in front of the one in which I sat. Q. State whether or not those two seats had been turned toward each other? A. They were. They were reversed so the two seats were facing each other? Q. So, when you were sitting in the train, you were facing north, the direction the train was going? A. Yes, sir. Q. After you picked up your grip or valise, what did you do? A. I stepped in the aisle at the end of the seat in front of me and reached for my umbrella. The umbrella was lying parallel with the seat, with the point toward the aisle. I picked up the umbrella and as I started with it, the train lurched forward and threw me backward and that end of my umbrella caught on the back of the seat on which I was sitting, and my body came against the point of the umbrella. Q. You say the train lurched forward, tell the jury how far the train went forward after that jerk or by that lurch? A. I do not know just how far the train went forward; but I think it went

about the length of a coach, as I noticed at the depot the north end of the coach was about opposite to the south end of the depot. Q. When was it opposite the south end, when it finally stopped or when it first stopped? A. When it first stopped. Q. Where was it when there was a final stop? A. When I came out of the car, I came out of the south end which was about opposite the south end of the depot. Q. So the distance it went forward was about the length of the coach? A. I think so, or about that. Q. Just tell the jury whether or not the train had stopped or was standing still at the time you picked up your umbrella? A. That is my opinion, that it was standing still. Q. If it was not still, how fast was it going? A. Well, it was moving very slowly. Q. Now, tell the jury just where the point of the umbrella struck your body? A. Well, I can show the jury better standing. As I raised the umbrella, just as I raised with the umbrella, then the train moved forward; and the umbrella, I fell forward, like this, and that end of the umbrella struck the end of the seat and the point struck me right there (indicating), and as I doubled over, it punched down like that and there is where the injury is. Q. What caused you to be thrown forward? A. The sudden movement of the train. Q. When you speak of being thrown forward, you mean you were thrown which direction? A. South, toward the rear of the car. Q. Tell the jury what it was that the other end of the umbrella struck against? A. Against the back of the seat on which I had been sitting. Q. At the time you stepped out in the aisle, as I understand you before you got out in the aisle you took up your dress suit case? A. Yes, sir. Q. And after you got out in the aisle, you reached over and took up your umbrella? A. Yes, sir. Q. And during all this time the train was slowly moving toward the station? A. The train had stopped at the time I picked up my dress suit case. Q. Look and see if you answered the top question, read it? A.

'Now, when you got up and stepped out in the aisle and turned around and picked up your umbrella, during some of that time the train was moving, in other words, the train was moving while you did that it took you some little time.' Q. Is that correct? A. Yes, sir, it took some little time; but I think the train was not moving at that time. Q. Now, wasn't this question asked by Mr. Burns: 'Now, Professor, you are not sure whether the train stopped or not before you got hurt? A. Not absolutely certain that it stopped still.' Is that correct? A. Yes, sir. Q. Was this question asked you: 'You are sure it slowed up? A. Yes, sir.' A. Yes, sir. Q. Was this question asked you: 'But don't know whether it came to a full stop or not? A. No, sir, I do not.' Is that correct? A. That is correct. Q. Was this question asked you in your deposition: 'Now, the distance from where it slowed up and where you supposed it had stopped to where it finally did stop and the passengers got off was about the length of one car? A. About that.' Now, is that correct? A. Yes, sir. Q. The brakeman had called this station at Bucklin when the train was within about one hundred yards of the station? A. About that. Q. And the train began to slow down, and when you got up in the aisle and gathered up your suit case and your umbrella, the north end of the car, the end of the car where you were, was about the south end of the depot? A. Yes, sir. Q. And when the train came to a full stop and you alighted, the south end of the car was up at the depot? A. It was.''

The plaintiff occupied a seat near the hind end of the car. If, after the trainman had called out Bucklin and the train had come to a stop, or, so nearly so that its movement was barely perceptible, and the plaintiff had left his seat and was standing in the aisle of the car with his suit case in hand, just preparatory to making his departure, and had reached down and grasped his umbrella, and was raising it the train suddenly

lurched forward, whereby plaintiff was thrown toward the hind end of the car, and the handle end of his umbrella faced against the back of the seat—then in front of him—and the other end—the point—against his abdomen, as the plaintiff testified, then the defendant as guilty of actionable negligence. It sufficiently appears from the plaintiff's evidence that after the train had stopped it was given a lurch, the suddenness and violence of which was sufficient to throw plaintiff forward, one end of his umbrella striking the back of a seat and he the other, and this, it was proved, caused the injury of which complaint is made. The sudden lurching of the train forward was a negligent act and if, as the evidence of the plaintiff tends to prove was the fact, it was the direct and proximate cause of the injury, there was liability.

The plaintiff having been accepted as a passenger on its train, it was bound to exercise the highest degree of care of a prudent person under similar circumstances for his safety and to be held to a strict responsibility therefor. In Barth v. Railway, 142 Mo. 1. c. 550, it was said that, "a railway passenger carrier is bound to allow its passengers reasonable time to enter and leave its cars, and while it may start before a passenger has been seated, it must exercise the highest degree of care that a prudent and cautious person would use and exercise under similar circumstances in starting its cars, so as not to suddenly jerk or jar him, and thereby injure him." Dougherty v. Railway, 9 Mo. App. 478. And of course the same rule is applicable where a train has stopped and a passenger is in the act of leaving one of its coaches.

The contention of the defendant is that it is shown by the evidence that the lurch was occasioned by the release of the air brakes and that it is usual and ordinary and can not be avoided by the most careful management of its passenger trains. But we do not so understand the evidence. The testimony of the defendant's

conductor was that the lurch or quiver of a passenger train which is caused by the release of the air brakes has a tendency to throw a person toward the *front* instead of the *rear* of the train. Ramsdell, the defendant's car inspector, testified that when the air brakes are released the cars settle back from the engine just as they stop.

The plaintiff's testimony was that the lurch was forward and that it proceeded a car length before it again came to a full stop. There is nothing in the evidence to authorize the inference that the sudden forward lurch of the train to the length of a car was caused by the release of the air brakes, or, if so, that the lurch was such as was usual and ordinary, and could not be avoided by the most careful management of passenger trains. As has been already said, the usual and ordinary lurch resulting from the release of the air brakes, is to impart to the cars a backward movement from the engine which would tend to throw a standing passenger forwards towards the engine. It therefore becomes at once obvious that the forward lurch, which occasioned the plaintiff's injury, did not result from the release of the air brakes, but from some other cause, probably that of moving the train by the negligent use of the motive power. The evidence that the release of the air brakes of a train usually and ordinarily imparts a backward lurch or settling of the cars does not tend to show that the accident did not arise for want of care on the part of the defendant.

In Dougherty v. Railway, 81 Mo. 325, it was said: "Where the vehicle or conveyance is shown to be under the control or management of the carrier or his servants, and the accident is such as under an ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence in the absence of explanation by defendant, that the accident arose for want of care." And no good reason is seen why the application of this rule may not be in-

voked in resolving the question now before us.  We are unable to discover anything in the evidence to warrant the defendant's assumption that the forward movement of the car, which the plaintiff testified as causing his injury, was necessary and incident to the usual and proper operation and management of defendant's train, and therefore we think the numerous authorities cited and relied on by it are without application.

Nor do we think we are authorized to hold as a matter of law that because the plaintiff picked up his umbrella by taking  hold of it near the middle instead of by the handle, so that in that way he brought the point around in front of his body that he was thereby guilty of contributory negligence.  When this was done the train was either standing still or was moving so slowly as not to be noticeable.  It was at the station platform and the plaintiff had arisen from his seat and was standing in the aisle preparatory to leaving the car when, without any warning, the car suddenly started forward.  The plaintiff had a right to presume that it would remain stationary, or nearly so, until after a reasonable time for him to leave the car had elapsed.  The case was we think one for the jury.

The court gave twenty-one instructions, five for plaintiff and the remainder for defendant.  They presented for the consideration of the jury every conceivable phase of the case.  It is not contended that there was any error in the action of the court in that regard.

The verdict is therefore conclusive on us and the judgment must be affirmed.  All concur.