SINCLAIR v. THE CHICAGO, BURLINGTON & KANSAS CITY RAILWAY COMPANY, *Appellant*.

Division One, March 10, 1896.

1. **Railroad:** TRESPASSER ON TRACK: NEGLIGENCE. The servants of a railroad in charge of its trains owe, even to a trespasser on its track, the duty of care to avoid injuring him. Such duty arises in all cases so soon as the perilous situation of the trespasser is discovered.

2. ———: ———: ———. Where the engineer sees that the trespasser is not informed of his peril, it is the former's duty to give the latter a sufficient warning, and in time for him to leave the track in safety.

3. ———: ———: ———. The fact that the engineer could have seen the trespasser on the track when one eighth of a mile from him and gave no warning till within four hundred feet, is not negligence if such warning was given in time for the trespasser to have safely left the track.

4. ———: ———: ———. That the engineer failed to reverse his locomotive and to apply the air brakes as soon as he saw the danger, does not make the company liable if it appears the train could not have been checked in time to avoid the accident.

*Appeal from Carroll Circuit Court.*—HON. W. W. RUCKER, Judge.

REVERSED.

*H. H. Trimble* and *Palmer Trimble,* with whom is *J. H. Carroll,* for appellant.

(1) Evidence of the custom of persons to walk on the track where deceased was struck, is incompetent. *Yarnall v. Railroad,* 75 Mo. 575; *Barney v. Railroad,* 126 Mo. 388; *Gurley v. Railroad,* 104 Mo. 211; *Masser v. Railroad,* 27 N. W. Rep. (Iowa) 776; *Thomas v. Railroad,* 61 N. W. Rep. (Iowa) 968; *Hyde v. Railroad,* 110 Mo. 272.   (2) Sinclair was a trespasser and appellant was not bound to look out for him.   *Maher v. Railroad,* 64 Mo. 267; *Yarnall v. Railroad, supra; Williams v. Railroad,* 96 Mo. 275; *Shaw v. Railroad,* 104 Mo. 648; *Boyd v. Railroad,* 105 Mo. 371; *Reardon v. Railroad,* 114 Mo. 384; *Bell v. Railroad,* 72 Mo. 50; *Barker v. Railroad,* 98 Mo. 53; *Thomas v. Railroad,* 61 N. W. Rep. (Iowa) 968; *Bouwmeester v. Railroad,* 34 N. W. Rep. (Mich.) 414.   (3) Appellant owed no duty, under the circumstances of this case, till the trainmen saw that he was in a perilous situation.   Authorities, *supra.*   The duty arose, not when the trainmen saw Sinclair, but when they became aware of his peril. Plaintiff failed to prove negligence after the trainmen became aware of his peril, hence the case should not have gone to the jury.   *Maloy v. Railroad,* 84 Mo. 270; *Masser v. Railroad,* 27 N. W. Rep. (Iowa) 776; *Zimmerman v. Railroad,* 71 Mo. 476; *Purl v. Railroad,* 72 Mo. 168; *Powell v. Railroad,* 76 Mo. 80; *Bouwmeester*

*v. Railroad*, 34 N. W. Rep. (Mich.) 414. (4) The fact that the railroad track was used as a footpath at the point where the deceased was struck, did not change the rule suggested in point 2, nor impose on the trainmen the duty of looking out for the deceased. *Yarnall v. Railroad*, 75 Mo. 575; *Masser v. Railroad*, 27 N. W. Rep. (Iowa) 776; *Railroad v. Mosley*, 6 C. C. A. 641. (5) The trainmen had a right to presume that Sinclair would get off the track in time to avoid a collision. *Reardon v. Railroad*, 114 Mo. 405; *Bell v. Railroad*, 72 Mo. 50 (62); *Apsey v. Railroad*, 83 Mich. 439; *Bouwmeester v. Railroad*, 34 N. W. Rep. (Mich.) 414; *Moody v. Railroad*, 68 Mo. 470; *Dunkman v. Railroad*, 95 Mo. 232; *Gunther v. Railroad*, 95 Mo. 287; *Hilz v. Railroad*, 101 Mo. 36. (6) The burden of proving that the trainmen were negligent, after discovering Sinclair's peril, is on appellee. There was no evidence of such negligence. *Barker v. Railroad*, 98 Mo. 50, 53, 54, 55; *Hallihan v. Railroad*, 71 Mo. 113, 116, 117, 118; *Barney v. Railroad*, 126 Mo. 372; *Zimmerman v. Railroad*, 71 Mo. 477; *Railroad v. Howard*, 82 Ky. 212; *Railroad v. Stroud*, 2 S. W. Rep. 171, 172, 173. (7) Presumption is that the trainmen did their duty. *Loring v. Railroad*, 31 S. W. Rep. (Mo.) 6. (8) No evidence that the trainmen could have stopped the train in less time than it was stopped. *Loring v. Railroad*, 31 S. W. Rep. 6; *Barker v. Railroad*, 98 Mo. 53.

*C. A. Mosman* and *A. W. Mullins* also for appellant.

(1) Under the pleadings it was error for the court to allow plaintiff to show that pedestrians were accustomed to walk along the track where Sinclair was killed. *Glass v. Railroad*, 10 So. Rep. 215; *Railroad v. Meadows*, 10 So. Rep. 141; *Railroad v. Brown*, 18 S.

W. Rep. 670. (2) The reception of the incompetent evidence offered by the party having the burden of proof, is not cured by an instruction withdrawing it from the jury, when it is the only evidence bearing directly on the issue. *Mueller v. Weitz,* 56 Mo. App. 36; *Sidekum v. Railroad,* 93 Mo. 406. (3) But we contend that evidence of this character could not have any bearing on the question involved in this action. The true rule is, that defendant's servants were not bound to look out for Sinclair at all, and owed him no duty. At most, the passive acquiescence of defendants in the use of its track only gave to him the rights of a licensee. A licensee enjoys his license with its concomitant perils. A landowner owes no duty to look out for a licensee. *Barney v. Railroad,* 126 Mo. 389; *June v. Railroad,* 26 N. E. Rep. 238; *Blanchard v. Railroad,* 18 N. E. Rep. 799; *Glass v. Railroad,* 10 So. Rep. 217. (4) The court erred in giving to the jury the plaintiff's first instruction. It required the jury to find that the defendant's engineer became aware of Sinclair's peril in time to have averted the injury. There was absolutely no evidence which would warrant the court in submitting this issue to the jury. Defendant's engineer had the right to presume that Sinclair would leave the track. *Maloy Case,* 84 Mo. 275; *Boyd v. Railroad,* 105 Mo. 375; *Hyde v. Railroad,* 110 Mo. 279; *Reardon's Case,* 114 Mo. 405. (5) A trial court should not give instructions on a matter of negligence, where there is no evidence to support them. *Evans v. Railroad,* 106 Mo. 594.

*John P. Butler* and *J. W. Clapp* for respondent.

(1) Instruction number 1 given for plaintiff is a clean cut declaration of the law applied to the case in hand. It is a sound exposition of the law, founded on

the broad principles of humanity. It is likewise well grounded on a sound public policy. The principle it enunciates has met with the frequent approval of this court. Nor is it subject to the criticisms made by appellant's counsel. *Guenther v. Railroad*, 95 Mo. 232; *Rine v. Railroad*, 100 Mo. 228; *Hanlon v. Railroad*, 104 Mo. 381; *Fiedler v. Railroad*, 107 Mo. 645. (2) These cases have met with the frequent approval of this court. *Guenther v. Railroad*, 108 Mo. 18; *Lynch v. Railroad*, 111 Mo. 601; *Reardon v. Railroad*, 114 Mo. 384; *Prewitt v. Eddy*, 115 Mo. 283; *Hicks v. Railroad*, 124 Mo. 115; *Bunyan v. Railroad*, 127 Mo. 12. (3) The demurrer to the evidence at the close of plaintiff's case and again renewed by an instruction of like effect was properly refused. Where the defendant offers a demurrer to the evidence in his own behalf, and the evidence as a whole entitles the plaintiff to go to the jury, the supreme court will disregard the demurrer, even though it should have been sustained in the first instance. *Bowen v. Railroad*, 95 Mo. 298; *Guenther v. Railroad*, 95 Mo. 286. (4) The court did not err in refusing instructions as asked by the appellant nor in modifying the same.

MACFARLANE, J.—This is an action by the widow of John B. Sinclair to recover the statutory damages of $5,000 for the death of her husband by the alleged negligence of the defendant in the operation of one of its trains. The negligence charged in the petition is that defendant's engineer, "after seeing the dangerous position in which plaintiff's deceased husband was situated, and seeing the imminent peril, and that the deceased was unaware of the near and dangerous approach of said train, negligently failed to sound the usual and ordinary danger signal in time to avert the injury complained of, and * * * negligently failed and neglected to use the air brakes and other appliances

provided for stopping the train, and negligently failed to use the appliances provided and at hand for putting said train under control, but on the contrary thereof, recklessly, negligently, willfully, and wantonly ran its said engine and cars upon and against the plaintiff's said husband." The answer was a general denial and a plea of contributory negligence. The case was tried to a jury upon the pleadings, and resulted in a judgment for plaintiff from which defendant has appealed.

The evidence shows that defendant owned and operated a railroad through Sullivan county. From the village of Boynton, a station on the road, the track ran in a northwesterly direction through a farming country. A short distance from the station the railroad crosses a public road from which it is straight and the view unobstructed for at least a fourth of a mile. From the road crossing north the railroad track is fenced.

John B. Sinclair, at the time of his death was about seventy-two years old and lived two and one half miles northwest of the station. On the thirtieth day of December, 1892, deceased walked to Boynton station. The north bound train was due there at a few minutes before 3 o'clock, which deceased knew, but there was a report from some unknown source that the train was late and deceased started home. In walking between his home and the station it had been his custom to travel upon the railroad track for a distance of about three fourths of a mile, at which point a footpath diverged from the road to the northwest. On this occasion he adopted the usual route upon the railroad track.

The train reached the station at 3 o'clock and after making a short stop proceeded northward following deceased. The bell on the engine was rung by the machinery which propelled the train, and was therefore

rung continually while the train was in motion. At a distance of about one eighth of a mile north of the road crossing mentioned the train struck and killed plaintiff's husband. The circumstances attending the accident and the conduct of the engineer and of deceased as disclosed by the evidence will be given more in detail in the opinion.

During the progress of the trial evidence was admitted, over the objection of defendant, tending to prove a common practice of persons living in the neighborhood of the home of deceased to use the track of the railway as a path in going to and from the station. At the close of all the evidence defendant asked an instruction to the effect that upon the pleadings and evidence the verdict should be for defendant. This was refused by the court.

I. That deceased had negligently placed himself in a position of danger is not controverted by plaintiff. Ordinarily such contributory negligence would bar a recovery. But there is a well recognized exception to the rule. The employees of a railroad corporation, in charge of a train, owe, even to a trespasser, the duty of care to avoid injuring him. *Fiedler v. Railroad,* 107 Mo. 647. The ground of this action is a neglect to perform that duty. Under the cause of action stated in the petition the original negligence of deceased in walking upon the track is impliedly admitted. His negligence in that particular is not, therefore, an issue in the case as made by the pleadings. The right of recovery depends upon the conduct of the parties in the situation they occupied immediately preceding the collision. The question involved requires a determination of the respective duties of the engineer and deceased in the circumstances in which they were situated, and whether those duties were discharged.

To determine these the situation and surroundings

must be considered. The day was mild, for the season, and there was but a slight breeze in the air. The train was running through a farm on a slightly ascending grade. There was neither noise nor objects to distract or attract the attention of either the engineer or deceased, except the noise of the train and the ringing of the engine bell. The train was equipped with all modern improvements intended for controlling it. The engineer had twenty years' experience, and was presumably skilled.

The petition charges that the engineer was negligent, after seeing the dangerous position in which plaintiff's husband was situated, in failing to give a danger signal of the approach of the train. What was the duty of the engineer in respect to giving deceased warning, and when did that duty arise?

It may be safely said as a general rule that the duty of care arises in all cases as soon as the perilous situation of the trespasser is discovered.

The instinct of self-preservation, as well as common judgment, impels one on a railroad track to leave it on the approach of a train. This law of nature is universal with intelligent beings. From this universal law is evolved the legal principle that persons in charge of a train have the right to presume that one walking upon the track will leave it in order to allow a train to pass if they have knowledge of its approach.

Under the circumstances in which these parties were placed the immediate duty required of the engineer, when he saw that deceased was unaware of his peril, was to give a proper warning. This duty required such a signal as could have been heard and could not have been misunderstood; such an one as would arouse deceased from his apparent mental abstraction or indifference to a sense of his danger, and the necessity of action on his part to avoid it.

That such a signal was given is not denied, and is established by the evidence of many witnesses and is disputed by none. It was also the usual danger signal. It was heard all over the immediate neighborhood. One witness, called by plaintiff, who was some distance from the place of the accident, described it as a sharp whistle, such as is given for stock on the track, and that it could have been heard two or three miles. The engineer can not be charged with negligence as to giving a signal, nor as to its character and sufficiency.

II.   The next inquiry is whether the notice was timely. The engineer testified that he first saw deceased when about four hundred feet from him, and immediately gave the danger signal.   If his testimony is true then the charge of negligence in respect to giving the signal is met and refuted.   There was no direct evidence that the engineer saw deceased sooner, nor is there a charge of negligence in failing to see.   But the evidence shows that deceased was in full view of the engineer for about one eighth of a mile, and from that circumstance, coupled with the duties of the engineer to his employer to keep a watch upon the track, a jury might infer that deceased was seen for more than four hundred feet.   *Rine v. Railroad*, 100 Mo. 235.   Assuming, then, that the engineer saw deceased as soon as he came in sight, when did his duty of care begin?

Deceased was bound to know, and, in this case did in fact know, that a train was due behind him. It was his duty to keep a vigilant watch for it.   Indeed, that duty is imposed upon all who go upon a railroad track. The engineer had the right to suppose, when he first saw him, that he would hear or see the train and leave the track.

It was recently said by this court:   "Defendant, of course, had the right of way, and was not bound to

anticipate that persons trespassing on the track would not step aside before a coming train." *Hyde v. Railroad*, 110 Mo. 279.

In another case it was said: "When plaintiff stepped on the track, it was the engineer's duty to warn him, and this he did. The engineer had a right to presume that an adult would at once step off the track and avoid danger. He was not required to stop his train until he saw plaintiff was in a position of danger or peril." *Reardon v. Railroad*, 114 Mo. 405.

In that case the court says further: "The use of the steam brake immediately upon his entering upon the track would unquestionably have stopped the train, but whether it would after plaintiff had fallen and it became evident he was in peril, was, at least, a debatable question."

From these cases, and many others that might be cited, it seems to be well settled that where no conditions intervene to confuse, or to prevent hearing a signal, and knowing its object, it will be sufficient if given in time for the trespasser to leave the track safely.

The question then is, was the signal given in time to have allowed deceased opportunity to escape the danger. The engineer testified that the danger signal was sounded when the engine was about four hundred feet from deceased. Other evidence made the distance three hundred and forty feet. These are the maximum and minimum estimates. If the train was running twenty-five miles per hour, which was the estimated rate, it covered about thirty-six feet every second, or three hundred and sixty feet in ten seconds. If deceased walked at the rate of two and one half miles per hour he would travel about three feet in a second, and thirty feet in ten seconds. Five feet would have taken him out of danger.

McDowell, a witness for plaintiff, testified that

while working about his barn he heard the whistle and thinking some of his stock was in danger he stepped around to a point from which he could see the train and deceased. It required about three steps in order to get the view. He saw deceased walking down the track as though he did not know the train was following. After he got in sight the engine whistled two more times, the last of which was just as deceased was struck. After he came in sight of deceased he took three or four steps before he was struck. Even according to the evidence of this witness deceased must have walked fifteen or twenty feet after the danger signal was given. He had therefore ample time to have escaped the danger after the signal.

The engineer was not, therefore, negligent in respect to his first duty on ascertaining that deceased was not aware of the approach of the train.

III.   The petition charges further that the engineer negligently failed and neglected to use the air brakes and other appliances ready and at hand for stopping the train. In other words, the charge is that the engineer was negligent in not stopping the train in time to avoid striking deceased. This duty of the engineer arose as soon as he knew, or by proper care ought to have known, that deceased did not regard the warning signal. The engineer on this question testified that after giving the signal, and observing that deceased did not heed it, he immediately put on the full force of the air brakes, reversed his engine, and did everything in his power to arrest the speed of the train and stop it, continuing, at the same time, to sound the alarm whistle. His evidence receives some corroboration from the trainmen and some other witnesses. There was no direct contradictory evidence. One of plaintiff's witnesses who had been a locomotive engineer testified that the engine was reversed between

the first and second whistles, and the air brakes were on when the train stopped, but he did not know when the air was applied.

The evidence tended to prove, though conflicting on the question, that the engine ran five hundred and sixty feet after deceased was struck. The evidence also tended to prove that the train could have been stopped in six or seven hundred feet. From these facts the further fact that everything was not done that could have been done to stop the train, might be inferred. But that is not the question. The question is whether the train could have been stopped in time to have avoided the calamity. If it could not and the collision was inevitable, unless deceased acted, then, though the engineer was negligent, it could not be attributed to defendant as the proximate cause of the disaster.

When such dire results occur in so brief a period of time it is difficult to measure accurately either time or distance. Suppose the engineer was three hundred and fifty feet from deceased when his duty to warn him arose, and the train was running twenty-five miles per hour, or say thirty-five feet per second. The engineer sounded the whistle and observed its effect. Say that occupied only three seconds, it could scarcely have been less. The train had then run one hundred and five feet nearer to deceased. Take two seconds more for applying the brakes and reversing the engine and the train moved seventy feet farther, before its motion could have been retarded. The engine was then within one hundred and seventy-five feet of deceased. Suppose it ran five hundred and sixty feet after it struck deceased, the stop would have been made in seven hundred and thirty-five feet, a very little over the shortest estimated distance. But, conceding that the train could have been stopped in six hundred feet,

it is perfectly clear that the life of plaintiff's husband could not have been saved by anything the engineer could possibly have done toward stopping the train; for at most he had only four hundred feet in which to do it. We must, therefore, conclude that no negligence on the part of defendant was shown.

IV. This conclusion obviated the necessity of considering the contributory negligence of deceased after the signal was given. It was certainly his duty to leave the track immediately on hearing the signal, and not to depend upon the engineer to stop the train. If by reason of a neglect of that duty he was caught on the track his contributory negligence would defeat his recovery though the engineer was also guilty of negligence in not stopping in time to avoid the collision. The character of the signal was such that in the quietness of that afternoon, and the surroundings, we can but conclude that it was heard. The evidence also shows that deceased was struck within thirty-five feet of the point at which he would have left the track. It shows further that after the signal was given deceased changed his course from the center of the track in a diagonal direction toward the left rail, and when struck was outside the rail. These facts show conclusively that the signal was heard by deceased. His subsequent conduct indicates that he miscalculated the distance it was from him, and thought he had time to reach the footpath by which he intended to leave the track, or that he had time to walk off deliberately. One or the other of these conclusions must be drawn. In either case there would be contributory negligence.

We are of the opinion that the evidence shows no liability, and the judgment is reversed. All concur.